STATE ex rel CONWAY, Attorney General, Plaintiff, v.
HUGHES, Circuit Judge, et al, Defendants.

(255 N. W. 800.)

(File No. 7718.   Opinion filed June 19, 1934.)

*Walter Conway,* Attorney General, and *Benj. D. Mintener,* As-
sistant Attorney General, for Plaintiff.

CAMPBELL, J.   This is an original proceeding in certiorari
upon the relation of the Attorney General questioning the juris-

diction of the circuit court of Stanley county, S. D., to make and enter a certain order bearing date April 2, 1934.

All material facts are undisputed and are as follows: On September 7, 1933, one Tennant was informed against in the circuit court of Stanley county for the crime of assault with a dangerous weapon with intent to do great bodily harm. On the same day Tennant appeared in court with his counsel and entered a plea of guilty. The stenographic transcript of the proceedings had at that time shows that the assaulted party also appeared before the court, stated some circumstances in extenuation of Tennant's conduct, requested leniency, etc., whereupon the judge said in part as follows: " * * * I don't believe the Court would be justified in letting this man go entirely, but under the circumstances I feel like being lenient with him. I will insert a condition in the sentence that if you or your friends make a showing in the future as to your past and guarantee your future conduct the sentence may be suspended, in the future, but not at this time." The written sentence and judgment of the court was signed and filed on the same day committing Tennant to the state penitentiary for the term of two years, and reciting in part as follows: "This sentence is subject to modification or suspension by the court at any future time." Tennant was immediately conveyed to the state penitentiary, and was receipted for by the warden and started the service of his sentence on September 8, 1933.

Subsequently a showing was made to the circuit court of Stanley county which led the judge thereof to believe that further execution of the sentence imposed upon Tennant should be suspended, and on April 2, 1934, an order was made and entered by said circuit court reciting (subject to certain conditions and restriction imposed upon Tennant) : " * * * That the sentence of this court dated the 7th day of September, 1933, wherein and whereby Ed Tennant was confined to the State Penitentiary at Sioux Falls for the period of two years thereafter be and the same is hereby suspended during the good behavior of the said Ed Tennant; and it is further ordered that the said Tennant be released from the said South Dakota State Penitentiary. * * * "

The Attorney General, alleging that the warden was about to comply with said order and release Tennant, instituted the present proceeding for review upon certiorari, contending that such order

was beyond the jurisdiction of the circuit court and utterly void.

Section 5175, Rev. Code 1919 (as amended, chapter 126, Laws 1925), requires the holding of a regular term of the circuit court in Stanley county annually on the second Tuesday in March and the first Tuesday in October. By statute (sections 2117, 4654, Rev. Code 1919) the circuit court is always open for the purpose of hearing and determining all actions, special proceedings, motions, and applications of a criminal nature arising under the laws of this state and of which it has jurisdiction except issues of fact, and (sections 4740, 4741, Rev. Code 1919), when any person charged with the commission of a public offense has been held to answer and desires to enter his plea of guilty, an information may be immediately filed and the defendant may be arraigned, enter a plea, and receive a sentence from the judge at chambers at any time with like force and effect as if at a term of the court. It does not definitely appear from the record certified to us whether or not September 7, 1933, when the sentence here involved was imposed, was a day of any regular or special term of the circuit court of Stanley county, nor does such information appear from the record with reference to April 2, 1934, when the suspension order was made. In any event, September 7, 1933, and April 2, 1934, were not days of the same term of said circuit court, since there intervened between them both the first Tuesday in October, 1933, and the second Tuesday in March, 1934, at each of which times the law required the opening of a new regular term of said court.

The effort to empower trial judges to suspend sentence in criminal cases in certain instances originated in this state with chapter 163, Laws 1913, and the history of the matter, including the constitutional amendment of 1930 (Const. S. D. art. 5, § 39) and the subsequent enactment of chapter 126, Laws 1931, has been to some extent stated and reviewed in our opinion in the case of State ex rel Caldwell v. Skinner (1931) 59 S. D. 68, 238 N. W. 149. The instant proceeding appears to require the determination of some of the speculations and inquiries suggested but not passed upon in the Caldwell Case.

By way of preliminary, we may state, as a matter of law, that the inclusion in the sentence of September 7, 1933, of the recital, "This sentence is subject to modification or suspension by the court at any future time," neither adds to nor detracts from

the situation. A court cannot thus create or reserve power and authority for itself, and we are of the opinion that such recital in the original sentence is mere surplusage and void and ineffective for any purpose. Western Bldg. Co. v. Penney Co. (1932), 60 S. D. 630, 245 N. W. 909. See, also, Weld v. Weld (1881) 28 Minn. 33, 8 N. W. 900; Woods Bros. Const. Co. v. Yankton County (C. C. A. 1931) 54 F. (2d) 304. The question is as to the jurisdiction of the court to make and enter the suspension order of April 2, 1934, and the existence of such jurisdiction cannot depend on the recital last above quoted, nor could such recital create a jurisdiction otherwise nonexistent.

The first inquiry for determination is whether the phrase "to suspend sentences of persons convicted," as found in Const. art. 5, § 39, and chapter 126, Laws 1931, has reference to suspending the imposition of sentence or to suspending the execution of sentence after imposition. This same question was suggested under the 1913 law as amended in 1923 but never precisely decided; the 1913 law being held unconstitutional whether the suspension of sentence therein mentioned was intended to mean the suspension of execution of sentence after imposition (State ex rel Payne v. Anderson [1921] 43 S. D. 630, 181 N. W. 839), or the indefinite suspension of the imposition of sentence (Ex parte Dunn [1926] 50 S. D. 48, 208 N. W. 224). When the proposed constitutional amendment (chapter 83, Laws 1929), which presently became section 39, art. 5, of the Constitution was submitted to the people at the November, 1930, general election, there was printed upon the ballot therewith an explanatory statement by the Attorney General (pursuant to section 7216, Rev. Code 1919, as amended by chapter 219, Laws 1921) as follows (italics ours):

"The pardoning power is vested by the Constitution in the Governor. Courts, therefore, have no authority *to suspend execution of sentences of conviction,* and it is not within the power of the legislature to vest such authority in the courts.

"The purpose and intent of the constitutional amendment is to insert a section in the Constitution to empower the legislature to confer authority upon the courts and the judges thereof to suspend sentences of persons convicted of crime during good behavior. The authority would be limited to the suspension of sentences of persons convicted for the first time under the laws of this state.

"A vote 'Yes' is in favor of a change in the Constitution, as above indicated, and a vote 'No' is in favor of leaving the Constitution as it now exists."

In view of the history of the matter, and particularly in view of the explanatory statement of the purpose and object of the constitutional amendment set forth on the ballot therewith, we believe that it was the intent of the people of this state by adopting the amendment to empower the Legislature to authorize courts "to suspend execution of sentences of conviction," and we are therefore of the opinion that the phrase "to suspend sentences of persons convicted," as found in the constitutional amendment and in the 1931 statute passed pursuant thereto, grants the power to suspend execution of sentence after imposition. And indeed this interpretation of that phrase is not seriously questioned by the learned Attorney General.

■■ Holding therefore that the present constitutional provision and statute authorize trial courts in the case of first offenders to suspend the operation and execution of sentence after imposition, we come to a further inquiry suggested in the Caldwell Case, namely, "At what point of time subsequent to the pronouncement of a sentence does the power to suspend the execution thereof terminate?"

Must the power of suspension be exercised at the time the sentence is imposed, or can it be exercised at any time prior to the completed execution of the sentence, or does the power of suspension expire at some point of time intermediate between those two limits, and, if so, when?

The position of the Attorney General's office with regard to this particular question as embodied in three opinions (Report; Attorney General 1932, p. 211; Id. p. 214; Opinion to Warden Reiley under date of April 11, 1934, not yet published) is not entirely clear. The first opinion appears to indicate the view that the suspension must be "by an order contained in the sentence imposed or simultaneously entered with the original sentence." But there appear also to be suggestions that perhaps the power of suspension continues until commitment under the sentence [cf. People v. Williams (1933) 352 Ill. 227, 185 N. E. 598; State ex rel Bottomly v. District Court (1925) 73 Mont. 541, 237 P. 525;

Miller v. Snook (D. C. 1926) 15 F. (2d) 68] or until the expiration of the term of court at which the sentence was imposed [cf. annotation, 44 A. L. R. 1203].

It is clear that the people of this state by the adoption of the constitutional amendment of 1930 intended to authorize the Legislature to grant to courts of this state a power which such courts had not previously enjoyed and which the Legislature (as this court had determined) could not previously have extended them. Neither the constitutional amendment nor the statute thereafter enacted purports to fix a specific time or limit of time for the exercise of the power of suspension. On the other hand, neither the statute nor the constitutional amendment purports to establish or extend the period of time during which trial courts normally and according to our regular procedure retain jurisdiction in criminal cases. The constitutional amendment and statute undertake merely to grant to trial courts (and the judges thereof) a new power of action concerning certain criminal cases. It seems reasonable therefore to hold that this new power of action thus granted to trial courts was intended to and may be exercised at any time while such courts retain a sufficient degree of jurisdiction of the cause to permit any action therein. Under our practice the trial court retains at least some degree of jurisdiction over a criminal case until the case is removed by appeal or the time for appeal has expired. The trial court retains sufficient jurisdiction even after commitment in execution of the sentence to permit, hear, and pass upon a motion for new trial in proper case at any time prior to the complete finality of the judgment by expiration of the time for appeal therefrom. Section 4946, Rev. Code 1919. Conceding that, as against an unwilling defendant, a valid sentence cannot be increased in severity after he has commenced the serving thereof (see note, 44 A. L. R. 1203; note, 70 A. L. R. 822), we are entirely unable to perceive why the mere fact of commitment and partial execution of sentence should operate to bar the power of suspension at the request of or with the consent of the defendant. Neither do we perceive any magic in the expiration of the term of court at which the sentence was imposed or the opening of a succeeding term. Today, under our practice, such a distinction is archaic and meaningless. It arose at the common law when courts could exercise no judicial functions save in term time. That is

no longer the rule with us, and since territorial days our circuit courts have been always open for the transaction of all court business save only the trial of issues of fact, and indeed since chapter 81, Laws Dak. 1887 (which later became, in substance, section 2117, Rev. Code 1919), there have not been, either in North Dakota or South Dakota, any "terms of courts" in the common-law sense of the words. Martinson v. Marzolf (1905) 14 N. D. 301, 103 N. W. 937; King v. McClurg (1895) 7 S. D. 67, 63 N. W. 219. As pointed out in the Caldwell Case, the power of suspension of sentence is not strictly or inherently a judicial power. It was conferred upon the courts by the Legislature pursuant to affirmative constitutional authority without any express statement or provisions as to time or time limit for the exercise thereof. We doubt if this newly granted power of suspension could be exercised by a court after it had completely lost all jurisdiction over the cause, but we see no valid or convincing reason why such power may not be exercised at any time while the court continues to retain some degree of jurisdiction over the cause, as, for instance, sufficient jurisdiction to hear and rule upon a motion for new trial. We are therefore of the opinion that the power of suspension conferred upon trial courts by chapter 126, Laws 1931, may lawfully be exercised by such courts in any criminal case within the purview of such statute at any time prior to complete loss of jurisdiction over the cause either by removal of the cause to a higher court by appeal or by the expiration of time for appeal from the judgment.

In the instant case no appeal had been taken and the time for appeal had not expired when the suspension order was made on April 2, 1934. It follows that the circuit court had jurisdiction to make and enter said order, and, this proceeding going only to jurisdictional questions and this court being of the opinion that the circuit court of Stanley county has regularly pursued its authority in the premises, it will be the judgment of this court that said order stand affirmed. The stay of proceedings embraced in the writ of certiorari herein will be vacated and the record certified to this court from the circuit court of Stanley county will be immediately remitted to said court with a copy of the judgment of this court.

All the Judges concur.