## IN THE MATTER OF THE DISBARMENT OF EDWIN L. BROWN.

(264 N. W. 521.)

(File No. 7791. Opinion filed January 11, 1936.)

*Walter Conway*, Atty. Gen., and *Benj. D. Mintener*, Asst. Atty. Gen., for Plaintiff.

*Edwin L. Brown*, of Flandreau, pro se.

CASE, J. This is an original proceeding brought in this court, under the verified complaint of the Attorney General, under and by order of this court, dated and filed with the clerk thereof, December 31st, 1934.

The order directed the Attorney General to draw up a formal complaint, based upon information theretofore filed with the court, charging respondent with practices in violation of his duties and privileges as an attorney at law, and further charging guilt of the respondent repeatedly, in matters defined in law as crime.

Respondent formerly practiced law in this state from the year 1901 to 1919, when he removed to the state of Wyoming, and was there admitted to practice law upon his license and permit granted to him in the state of South Dakota. After following his profession in Wyoming for a number of years, he was there suspended from practice for a period of three years for unprofessional and

improper conduct in the practice of law. His suspension extended from September 9, 1930, to September 9, 1933. State Board of Law Examiners v. Brown, 42 Wyo. 108, 290 P. 1013.

While under such suspension, it not having been revoked in the state of Wyoming, and on or about January 12, 1932, respondent returned to South Dakota, and resumed the practice of law at Flandreau, S. D., under the original permit and license theretofore granted to him. He continued to so practice law in this state until suspended by order of this court. filed and entered, effective December 13, 1932. This suspension was based upon a certified record of the proceedings of suspension against respondent in Wyoming, filed with this court. This suspension upon the grounds charged was admitted by respondent, and that he had in fact been suspended from the practice of law in the state of Wyoming. Respondent having been permitted to practice law in Wyoming by reason of his South Dakota license and permit, the law of comity between states should be recognized, which would at least require concurrent suspension of respondent in this state, when the matter was brought to the attention of the court.

Respondent was cited to appear before this court to show cause why his license to practice law in this state should not be suspended, until the expiration of his suspension in the state of Wyoming. As a result of that hearing, respondent was suspended, by this court, from the practice of law, until the expiration of his suspension in the state of Wyoming, the date of which was September 9, 1933. In re Brown, 60 S. D. 628, 245 N. W. 824.

This proceeding was brought in disbarment, charging a course of conduct, on the part of respondent, unbecoming an attorney at law, and in degree, a disgrace to the legal profession, and as showing a gross unfitness to be trusted with the right and license to continue the practice of law.

The complaint recited respondent's offenses upon substantially four grounds, namely:.

"A. Issuance and delivery of a large number of negotiable checks for money, upon a bank where he, at no time, had a deposit of funds or any bank account. These checks were issued from time to time, over the several signatures of 'Edwin L. Brown,' 'Edwin Lewis Brown,' 'E. Lewis Brown,' and 'Brown & Brown,' covering

a period of about twenty-two months, the larger number of which were drawn within the last twelve months preceding the filing of the disbarment charges.

"B. Misappropriation of money to his own use, received while County Judge of Turner County, South Dakota, prior to his removal to the State of Wyoming, and retained by him upon his subsequent appointment as Administrator with Will Annexed, in 1920, in said estate pending in Turner County, South Dakota, which funds have not been repaid, or properly accounted for by him, or payment in any manner made by him. This charge amounted to in excess of Seven hundred dollars.

"C. Abusing and permitting the abuse, by his clients, of the privilege of filing affidavits of prejudice, for change of Judges in civil cases pending in Court, and ready for trial, for the sole purpose of hindering, delaying and inconveniencing the opposing parties and attorneys, and without valid and substantial reasons or basis, to the effect that the respective Judges were unjustly biased and prejudiced.

"D. Obtaining a warrant of arrest in Moody County, South Dakota, under a felony charge, without the advice or consent of the State's Attorney of said county, for the purpose of coercing one Martin Peterson, to make a financial settlement with respondent's client, under threat of arrest and prosecution, then and there assuming to compound a felony which is contrary to the laws of this State. The said warrant was not delivered to the Sheriff of Moody County, where issued, for apprehension of the said Martin Peterson, but at all times, retained in possession of respondent. After a settlement was consummated between the parties, and after Martin Peterson had paid respondent's client, his demand, respondent caused said criminal action to be dismissed."

In answer to the charges, respondent interposed a general denial, coupled with certain specific denials, and then sets out reasons for the commission of the acts charged in the complaint.

The taking of testimony herein was referred to a referee, who made and filed his report adverse to respondent, and this matter is now before the court upon an order to show cause, directed to respondent, why he should not be disbarred from practice, as recommended by the referee.

Respondent, in answer to the charges filed, as to which testimony was submitted at the hearing and trial before the referee, sought to explain the causes and circumstances of the issuance of a large number of checks, the withholding of the funds in the Peterson estate, the filing of many affidavits of prejudice against the circuit judges, and obtaining the warrant of arrest for Martin Peterson, by way of excuse, palliation, and justification of his acts.

■ (1) Respondent had experienced a suspension from practice for three years in Wyoming, and for a concurrent period of ten months in this state, for malfeasance and dishonest practice of his profession. In re Brown, 60 S. D. 628, 245 N. W. 824. Notwithstanding the discipline of suspension he thus received, as a disapproval of his unprofessional conduct, he persisted in a course of acts and practices as charged, apparently in defiance of the warning had. His suspension was a severe rebuke to his unfitness to practice law, and was intended as a warning to cure and persuade him to overcome such unprofessional practices. Disregarding such discipline, he pursued a course of conduct, not to be permitted, but in direct conflict with his professional requirements. Such utter disregard for his professional qualification is sufficient proof of his unfitness to practice law, and his apparent lack of professional conscience is proof of his inability to maintain a fitness to be entrusted with the license and privileges of the profession.

The rule established in this state, on an application to be reinstated after disbarment, may well be applied in this case, when respondent has so recently been suspended for a period of years for the violation of his privilege to practice law. In re Morrison, 45 S. D. 123, 186 N. W. 556; In re Egan, 52 S. D. 394, 218 N. W. 1-16.

■ (2) It is charged in the complaint that about one hundred checks were illegally issued and delivered by respondent, nineteen of which were specifically mentioned and described therein.

At the trial before the referee, thirty-seven checks were proven to have been issued and delivered, without funds in the bank, and for which payment had been refused, and the checks returned to the holder for lack of funds, and because respondent had no account in the bank. This proof was submitted by the testimony of

the assistant cashier of the Farmers State Bank of Flandreau, S. D., upon which bank the checks were drawn, and by a book record of the bank, produced at the hearing, from which the date and return of the thirty-seven checks was shown. The issuance and delivery of most of said checks were admitted by respondent. As to the few checks not admitted, respondent claimed he had no memory as to their issuance.

Respondent also testified at the hearing before the referee that he had never had a checking account in the aforesaid bank, or any account in any bank, since the fall of 1932.

Chapter 15 of the Special Session of Legislature of South Dakota in 1933 provides:

"Section 1. Any person who with intent to defraud shall for a present consideration make or draw or utter or deliver any check, draft or order for the payment of money upon any bank or other depository, knowing at the time of such making, drawing, uttering or delivery that the maker or drawer has not sufficient funds in or credit with such bank or other depository for the payment of such check, draft, or order in full upon its presentation, shall be guilty of a misdemeanor, and upon conviction thereof, shall be fined not more than One Hundred Dollars ($100.00) or imprisoned for not more than thirty days or both.

"The making, drawing, uttering or delivering of such check, draft or order as aforesaid, shall be prima facie evidence of intent to defraud and as against the maker or drawer of knowledge of insufficient funds in or credit with such bank or other depository.

"The word 'Credit,' as used herein, shall be construed to mean an arrangement or understanding with the bank or depository for the payment of such check, draft or order."

It will be seen that the drawing, uttering, and delivery of such check, without funds to pay, establishes prima facie a misdemeanor, punishable by a fine of not more than $100.00, or imprisonment for a period of not more than thirty days, or by both such fine and imprisonment. Each check would constitute a separate offense. The law makes the delivery of such a check prima facie evidence of intent to defraud.

Section 4249 of the statutes of this state (Rev. Code 1919) relating to crime provides: "Every person who designedly, by color or aid of any false token or writing, or other false pretense, obtains the signature of any person to any written instrument, or obtains from any person any money or property, is punishable by imprisonment in the state penitentiary not exceeding three years or in a county jail not exceeding one year, or by a fine not exceeding three times the value of the money or property so obtained, or by both such fine and imprisonment."

Respondent admits receiving money, goods, and merchandise, in return for such checks so issued and delivered. Under either of the above-cited statutes prima facie an offense was committed against the law, punishable as provided therein. These offenses were persisted in up to the time this disbarment proceeding was begun and complaint served upon respondent, and, in fact, the proof shows three of such checks were so issued, delivered, and returned for lack of funds, after the disbarment complaint had been served on the respondent.

In re Egan, supra, this court held in substance that the commission by an attorney, of offenses defined as criminal presents such degree of moral turpitude as to be more than sufficient to warrant the disbarment of any attorney found guilty thereof.

Respondent has not been proceeded against criminally for the offenses committed, but the proof, and his admission of the issuance and delivery of the checks, was more than sufficient to warrant his disbarment. Respondent did not claim to have any arrangement with the bank for credit, with which to pay any of such checks.

(3) Respondent was charged with the misappropriation of estate money received when county judge in Turner County, S. D., prior to his removal to the state of Wyoming. He was thereafter, and in 1920, appointed administrator of the same estate. He has not paid over to the estate or parties entitled thereto the money so received, although he claims to have paid interest on the same up to 1920. Respondent admitted placing the money in his personal checking account, and using it, and that he had not paid it. His bondsmen were sued for the amount and made a compromise settlement.

Embezzlement is defined by our Code, section 4226, as follows: "Embezzlement is the fraudulent appropriation of property by a person to whom it has been intrusted."

The referee concludes as a matter of law that respondent has violated the above statute, constituting a willful violation of the duties of the accused as an attorney.

Rule 11 of the "Professional Conduct," adopted by the South Dakota State Bar, is as follows: "Money of the client or other trust property coming into the possession of the lawyer should be reported promptly, and except with the client's knowledge and consent should not be commingled with his private property, or be used by him." Aside from any crime charged, respondent has grossly violated the above rule, which rule of the state bar is one adopted for the protection of trust funds in the hands of an attorney, which should be observed inviolate.

(4, 5) The law provides that a litigant may file an affidavit of prejudice against a judge in a civil case, and be entitled to have a different judge called in to try his case. The law is a special privilege for the purpose only of preserving justice. Its purpose is not to provide the means to delay trial or serve the personal ends of a litigant or an attorney.

Respondent filed seventeen of such affidavits against judges in his circuit within a period of about five months, admittedly constituting all but three or four of the cases he was handling. The referee finds from the evidence submitted that respondent abused the privilege of filing such affidavits against circuit judges, to the embarrassment of the court, and for the purpose of causing unnecessary delay, and thereby encouraging the disrespect of judicial officers.

Rule 31 of "Professional Conduct," adopted by the State Bar of South Dakota, provides in part: "The responsibility for advising as to questionable transactions, for bringing questionable suits, for urging questionable defenses, is the lawyer's responsibility. He cannot escape it by urging as an excuse that he is only following his client's instructions."

And rule 32 provides in part: "He (the lawyer) must also observe and advise his client to observe the statute law, though until a statute shall have been construed and interpreted by com-

petent adjudication, he is free and is entitled to advise as to its validity and as to what he conscientiously believes to be its just meaning and extent. But above all a lawyer will find his highest honor in a deserved reputation for fidelity to private trust and to public duty, as an honest man and as a patriotic and loyal citizen."

Respondent sought to avoid responsibility for the filing of such affidavits by placing the blame on his clients. The rule above cited places a plain duty upon an attorney which he may not avoid by charging the responsibility to another.

Such apparent abuse of a privilege will be scrutinized closely and examined into by the court, and dealt with accordingly.

(6) The referee finds and concludes as a matter of law that respondent caused to be issued and used a criminal warrant, as a threat of criminal prosecution, and with an implied understanding to dismiss the proceeding if and when the money sought to be collected was paid, and that such proceeding was and is a violation of the duties of the accused as an attorney, although the accused followed the instructions of his client. As shown in rule 31, supra, of "Professional Conduct," "A lawyer cannot escape responsibility by urging as an excuse that he followed his client's instructions and desires."

Sections 3778 and 3779 of our Code define the compounding of crimes and the compounding of prosecution. While the person charged was not arrested under the warrant obtained by respondent, the referee says, "That the money obtained from Martin Peterson was obtained from him by accusing him of a criminal offense and by threat of criminal prosecution, and that said money was paid to the client of the accused by the said Peterson with the implied understanding that the criminal action against him would be dismissed, and that the accused (respondent) aided and abetted therein. * * *" This finding and conclusion seems to be supported by the evidence, and such procedure was, and is, reprehensible, and gross misconduct on the part of the respondent.

(7) Upon the findings and conclusions so filed by the referee, he recommends that the accused be disbarred.

A sacred duty and responsibility rests upon the shoulders of an attorney. He is not only intrusted with important matters of his client, but should exercise a conscientious effort to uphold and

maintain the dignity and prestige of the law, the courts and the judges thereof, whose bounden duty it is to construe and administer the law untrammelled by unwarranted acts of attorneys and clients. An attorney, if he desires to live up to the tenets of the profession, should live a life of rectitude, and possess and demonstrate in his professional practice a right conception of congruent character, which would protect him against practices inconsistent therewith, either intended to be done, or done through a failure to observe the proper rules of professional conduct.

■ In Corpus Juris, vol. 6, page 583, we find the following rule: "Any conduct on the part of an attorney evidencing his unfitness for the confidence and trust which attend the relation of attorney and client, and the practice of law before the courts, or showing such a lack of personal honesty or of good moral character as to render him unworthy of public confidence, constitutes a ground for his disbarment."

This court said, In re Elliott, 18 S. D. 264, 100 N. W. 431, 434: " 'By admitting an attorney to its bar, the court presents him to the public as worthy of its confidence in all of his professional duties and relations. If afterwards it comes to the knowledge of the court that he has become unworthy, it is its duty to withdraw that indorsement, and thereby cease to hold him out to the public as worthy of professional employment.' "

(8) This court realizes that it owes a duty to the public in the matter of the conduct of attorneys which it has admitted to practice law in this state. In re Elliott, supra.

The disciplining of an attorney at law, for violation of his obligations as such, or his disbarment, is not to be considered merely as a punishment, but as a safeguard in the administration of justice, for which the courts have been established, the judges thereof, the rights of litigants, and the public at large, as well as the honorable profession of law.

"Practice of law is not absolute right, but license and privilege in nature of franchise, which one may enjoy only on proof and maintenance of fitness and qualifications." In re Egan, 52 S. D. 394, 218 N. W. 1-16.

■■ It is laid down as a general rule in Corpus Juris, vol. 6, pp. 580, 581, § 36, as follows: "The right to practice law is not

an absolute right, but a privilege only which may be revoked whenever the holder's misconduct makes him unfit to exercise the duties of his office."

And section 37 of the same book and page provides: "It is well settled that a court authorized to admit an attorney has inherent jurisdiction to suspend or disbar him for sufficient cause, and that such jurisdiction does not necessarily depend on any express constitutional provision or statutory enactment. Not only has it this power, but whenever a proper case is made out it is its duty to exercise it. * * * The proceeding is not for the purpose of punishment of the attorney, but for the purpose of preserving the courts of justice from the official ministration of persons unfit to practice in them. The action of the court in the exercise of this power is judicial in its character, and the real question for determination in such proceedings is whether or not the attorney is a fit person to be longer allowed the privileges of being an attorney."

And in section 40, of the same volume of C. J., the rule is laid down: "Any conduct on the part of an attorney evidencing his unfitness for the confidence and trust which attend the relation of attorney and client and the practice of law before the courts, or showing such a lack of personal honesty or of good moral character as to render him unworthy of public confidence, constitutes a ground for his disbarment."

In R. C. L., vol. 2, p. 1089, the rule is stated: "Generally speaking, an attorney may be suspended or disbarred for such misconduct as shows him to be an unfit or unsafe person to enjoy the privileges and to manage the business of others in the capacity of an attorney, and it is usually held that any fault which would have been sufficient to prevent the admission of one as an attorney will justify his removal. It is not necessary that the attorney's misconduct should be such as would render him liable to criminal prosecution. If it shows that he is unfit to discharge the duties of his office, or is unworthy of confidence, even though the conduct is outside of his professional dealings, it is sufficient. If an attorney is not honest, or is not moral, or is not of good demeanor, he may be disbarred, and should be. His office is a very badge of respectability, a patent of trustworthiness, derived from his position on the court's roll of counsel. He ought not to be suffered to pass for what he is not."

■ The referee has filed his report containing specifications of charges against respondent which have been established. The record has been examined and found to sustain the findings of fact of the referee, and his conclusions of law are in accord with the views of the law approved by the court. We have examined and considered the exceptions filed by respondent to the report of the referee, and from such examination of the record and report, the court finds there is abundant evidence to sustain the findings of fact of the referee.

Finding the report of the referee, on the several charges in the complaint, sufficiently supported by competent proof to sustain such findings, it becomes the duty of the court to order, and it is hereby ordered, that the license and permit heretofore granted to respondent, to practice law in this state, be canceled, and that respondent's name be stricken from the roll of lawyers licensed to practice law in this state. Judgment will be entered accordingly.

GEO. W. CASE, Esq., of Watertown, and D. J. O'KEEFFE, Esq., of Pierre, sitting in place of ROBERTS and WARREN, JJ., disqualified.

POLLEY, P. J., and CAMPBELL, RUDOLPH and O'KEEFFE, JJ., concur.