**STATE of South Dakota, Plaintiff and Respondent,**

v.

**Richard PETERSON, Defendant and Appellant.**

**Nos. 12119, 12153.**

Supreme Court of South Dakota.

Argued Jan. 13, 1978.

Decided May 18, 1978.

---

6. *Tate v. U.S.,* 109 U.S.App.D.C. 13, 283 F.2d 377 (1970).

Philip N. Hogen, Jackson County State's Atty., Kadoka, Donald D. Foreman, Asst. Atty. Gen., Pierre, for plaintiff and respondent; William J. Janklow, Atty. Gen., Pierre, on brief.

Richard Peterson, pro se.

Wayne F. Gilbert and Michael B. Demersseman of Gunderson, Farrar, Aldrich, Warder & Demersseman, Rapid City, for amicus curiae the Unauthorized Practice of Law Committee for the State Bar of South Dakota.

PORTER, Justice.

## CASE SUMMARY

This is an appeal from two convictions of operating a motor vehicle without a valid official certificate of inspection, as required by SDCL 32–21–2. Defendant Peterson alleges various errors by the trial court, including denial of his request for lay counsel of his choice. We conclude that criminal defendants have no right to lay counsel of their choice, and affirm the judgments of the trial courts.

## FACTS

This appeal is a consolidation of two cases involving two convictions for two violations of the same statute. On September 17, 1976, and on October 25, 1976, defendant's pickup was stopped by state highway patrolmen because they noticed that the vehicle had no safety inspection certificate displayed in the lower lefthand corner of the windshield. Upon examining the vehicle, the officers in both instances found a "constitutional inspection sticker" on the windshield, which was not issued by the State. In the September 17, 1976, stop the patrolman asked to see defendant's driver's license, and defendant produced a "constitutional driver's license," which was not issued by the State. In complaints dated September 27, 1976, and November 17, 1976, defendant was charged with driving a motor vehicle without a valid safety inspection certificate, SDCL 32–21–2 and 32–21–31, and in the September 17, 1976, complaint he was charged with driving a motor vehicle without a valid operator's license, SDCL 32–12–22. Jury trials were held October 18, 1976, and January 8, 1977, in which defendant was found guilty as charged. On November 3, 1976, the charge in the first case for driving without a valid operator's license was dismissed because defendant produced a valid South Dakota driver's license. Defendant was fined $100 for the first offense and $105 for the second offense and sentenced to ten days in jail in each case, with the jail sentences suspended on condition that he not operate a motor vehicle without a valid safety inspection sticker for a period of one year in the first case, and six months in the second case. In each case defendant requested lay counsel of his choice, but his request was denied by the trial court. He appeals from his convictions.

## ISSUE

Although defendant made several assignments of errors in this case, the only relevant issue which was properly briefed and argued on appeal was:

Did the trial court err in denying defendant representation by lay counsel?

## DECISION

We conclude that the trial court did not err in denying defendant representation by lay counsel.

The sixth amendment to the United States Constitution provides, "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence," and Article VI, Section 7 of the South Dakota Constitution provides, "In all criminal prosecutions the accused shall have the right to defend in person and by counsel; . . . ."[1] Defendant contends that he has a constitutional right to lay representation, which is an issue of first impression in South Dakota, and a question which the United States Supreme Court has not yet answered.

In 1975 in *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562, upon which defendant relies heavily, the United States Supreme Court had occasion to scrutinize the terms of the sixth amendment to the United States Constitution. The defendant in *Faretta* had been denied a request to conduct his own defense without the assistance of counsel. The Court held that the sixth amendment guarantees a right of self-representation in criminal cases. Our reading of *Faretta* leads us to conclude that its holding merely supports the right of self-representation and not the right to lay representation. Defendant quotes at length from *Faretta*, but the passages quoted speak in terms of *legal* counsel and self-representation, not lay counsel and self-representation.[2] Defendant quotes many passages from early colonial charters and declarations of rights to attempt to indicate an intent by the framers of our Constitution that people be entitled to lay

1. Although we quote here the right to counsel as provided by the South Dakota Constitution, we note that defendant did not refer to this provision or South Dakota case law in support of his argument. We, therefore, will confine our analysis of the present issue to the United States Constitution and its interpretation by the courts.

2. The following two passages are footnotes of *Faretta*, quoted by defendant in support of his position, which speak in terms of representation by friends:

Such a result would sever the concept of counsel from its historic roots. The first *lawyers* were personal friends of the litigant, brought into court by him so that he might "take 'counsel' with them" before pleading. 1 F. Pollock & F. Maitland, The History of English Law 211 (2d ed. 1909). Similarly, the first *"attorneys"* were personal agents, often lacking any professional training, who were appointed by those litigants who had secured royal permission to carry on their affairs through a representative, rather than personally. *Id.*, at 212–213. *Faretta v. California*, 422 U.S. 806, 820 n. 16, 95 S.Ct. 2525, 2534 n. 16, 45 L.Ed.2d 562, 573 n. 16 (1975) (emphasis added).

Although admittedly this passage speaks of personal friends and personal agents as counsel, the crucial distinction between defendant's interpretation of this quotation and what it actually says is the fact that the Court is defining counsel as *legal* counsel, and thus tracing the roots of *lawyers* and *attorneys*; it is not saying that personal friends and agents should now be allowed to represent us if they are not lawyers. A similar passage states:

The Pennsylvania Frame of Government of 1682, perhaps "the most influential of the Colonial documents protecting individual rights," 1 B. Schwartz, The Bill of Rights: A Documentary History 130 (1971) (hereinafter Schwartz), provided:

"That, in all courts all persons of all persuasions may freely appear in their own way, and according to their own manner, and there personally plead their own cause themselves; or, if unable, by their friends . . ." *Faretta v. California*, 422 U.S. 806, 828 n. 37, 95 S.Ct. 2525, 2538 n. 37, 45 L.Ed.2d 562, 578 n. 37 (1975).

Although this passage does not necessarily use representation by "friends" as representation by legal counsel, this quotation is contained in the footnote supporting the statement by the majority that such documents establish that the right to counsel meant to the colonists a right to choose between legal representation and self-representation. Since the Court in *Faretta* already interpreted the meaning of this passage, we will not stray from that interpretation.

counsel, but in speaking of these same documents the Court in *Faretta* states:

> The right of self-representation was guaranteed in many colonial charters and declarations of rights. These early documents establish that the "right to counsel" meant to the colonists a right *to choose between pleading through a lawyer and representing oneself. Id.* at 828, 95 S.Ct. at 2537–38, 45 L.Ed.2d at 578 (emphasis added).

In the recent case of *United States v. Wilhelm*, 570 F.2d 461 (3d Cir. 1978), the United States Court of Appeals for the Third Circuit was confronted with an argument identical to that proposed by defendant here. In rejecting the criminal defendants' contention in *Wilhelm*, the court stated:

> Defendants ask us to construe the Sixth Amendment's reference to "Counsel" as embracing any person of their choice, be he unskilled in the law or barred by the rules of court from practice before it. To so hold would profoundly alter the legal framework in which criminal proceedings are scrupulously conducted in our courts. We decline to do so.
>
> . . . Defendants have cited to us no authority to the contrary other than the sincerity of their beliefs. Thus, we join with the impressive array of United States Courts of Appeals that have uniformly rejected the contention that criminal defendants have a constitutional right to be represented by a friend who is neither a law school graduate nor a member of the bar. [Footnote omitted] *Id.* at 465.

We agree with this analysis by the court in *Wilhelm*. Like the defendants in *Wilhelm*, the defendant in the present case has cited to us no authority to the contrary other than the sincerity of his beliefs.[3]

**3.** Although defendant cites many cases in support of his position, we find that even those cases which are factually similar to the case before us are clearly distinguishable.

Probably the strongest support for defendant's position comes from *United States v. Stockheimer*, 385 F.Supp. 979 (W.D.Wis.1974), in which the court did not *forbid* assistance of lay counsel. In *Stockheimer* the court clearly stated:

> While the Constitution does not guarantee this defendant the right to assistance by a person other than "counsel" as "counsel" is used in the Sixth Amendment, neither does it forbid him such assistance, unless the due process clause of the Fifth Amendment should be construed so as to protect the defendant from what may or may not prove to be his folly. In my view, the Fifth Amendment should not be so construed. *Id.* at 983.

*Stockheimer* involved a motion for an order to allow lay representation, not an appeal from a full-fledged trial. It clearly does not stand for the idea that a criminal defendant has a right to lay representation. We also note that the lay counsel desired by the defendant in *Stockheimer* had legal training, one having graduated from a law school and the other having been a member of the Minnesota bar, but both had been disbarred. With knowledge of their legal training in mind, the court in *Stockheimer* still stated:

> I consider that the "counsel" to whose assistance a defendant is entitled by the Sixth Amendment is a person who is legally trained and qualified to perform the function of an attorney for a defendant in a criminal case. [Citations omitted] I am not prepared to hold that the term "counsel," as used in the Sixth Amendment, includes only persons licensed by some state to practice law, and that the federal constitutional provision is thus limited by what the various states may choose to do about licensing. *But I am prepared to hold, and do hold, that neither Gordon Peterson nor Jerome Daly is "counsel," within the meaning of the Sixth Amendment. It follows that the Sixth Amendment does not guarantee the defendant the right to the assistance of Gordon Peterson or Jerome Daly for his defense.* It also follows that, absent an effective waiver, a conviction of the defendant in this case would not be valid if it followed proceedings in which he was represented by either Gordon Peterson or Jerome Daly. *Id.* at 983 (emphasis added).

The court later went on to state:

> Neither by this opinion and order, nor by any subsequent action by me in this case, do I intend to afford either [lay counsel in question] any protection or immunity whatever from the operation of any laws, state or federal, which may apply to them and their activities, particularly those laws of the states of Minnesota and Wisconsin with respect to the unauthorized practice of law. In all these respects, [these lay counsel] proceed at their own risk. *Id.* at 985.

We do not view the issue here as whether the Constitution forbids representation by lay counsel; rather, the issue is whether the denial of lay counsel violates the Constitution.

In *United States v. Whitesel*, 543 F.2d 1176 (6th Cir. 1976), the United States Court of Ap-

Similarly, *Turner v. American Bar Ass'n,* 407 F.Supp. 451 (N.D.Tex.1975), involved the same issue as that presented by the case before us. In *Turner* the court discussed both the sixth amendment right to counsel and the first amendment freedom of association and right to petition government for redress of grievances. It concluded

> that the Constitution of the United States, in particular the First and Sixth Amendments, does not grant to the Plaintiffs the right to have an unlicensed layman represent them in Court proceedings. The corollary of this holding is that unlicensed laymen cannot under the Constitution demand the right to represent other litigants. *Id.* at 478.

Later in summary the court stated:

> It is possible that lawsuits similar to the above will continue to be filed. In any case where the central theme of the complaint is the assertion of the right to have unlicensed lay counsel to represent a party, the Judge on whose docket the case falls should be free to dismiss the same *sua sponte,* even though he is a named party. A claim of the right to

unlicensed counsel has been foreclosed by this opinion. If this opinion is ultimately affirmed on appeal, the making of such claim in the future would be specious . . . . *Id.* at 483.

*Turner* was a consolidation of several cases, one of which was appealed to the United States Court of Appeals for the Eighth Circuit in *Pilla v. American Bar Ass'n,* 542 F.2d 56 (8th Cir. 1976). In ruling on the merits of the case the court in *Pilla* affirmed the lower court, stating that it could add nothing substantial to the well-reasoned opinion in *Turner.*

In spite of the fact that the cases upon which defendant relies are federal cases wherein pursuant to the regulations of the federal district courts the judges arguably have certain discretion in allowing representation by lay counsel, the federal courts have still held that there is no such constitutional right. In South Dakota there is no doubt that lay representation such as that requested by defendant would be a violation of SDCL 16–18–1.[4] This court does not have the "discretion" to allow lay representation because it would be a violation of

peals for the Sixth Circuit recognized that an argument similar to the defendant's in the present case had been rejected by three other federal circuits. *See United States v. Jordan,* 508 F.2d 750 (7th Cir. 1975); *United States v. Cooper,* 493 F.2d 473 (5th Cir. 1974); and *Harrison v. United States,* 128 U.S.App.D.C. 245, 387 F.2d 203 (1967). Nevertheless, the court went on to consider the issue. In *Whitesel* the desired lay representative was an accountant with no legal training. The court stated:

> But for a District Judge to exercise his discretion [rules of federal district courts appear to retain in the hands of the district judge the discretion to deal with any extraordinary case] to allow a person to try a case who was not a member of the bar of the court and who had not qualified by taking the required examination, would at a minimum require a showing that such person was sufficiently learned in the law to be able adequately to represent his client in court. *Id.* at 1180.

The appellate court concluded that the trial court's refusal to let the accountant represent the defendant was not an abuse of the defendant's sixth amendment rights. Similarly, in the present case the defendant made no showing of his requested lay counsel's knowledge of the law to ensure his adequate representation in court.

In *United States v. Tarlowski,* 305 F.Supp. 112 (E.D.N.Y.1969), the court did, in part, discuss the sixth amendment right to counsel. In holding that the denial of the right to have accountant-advisors present at IRS interviews for failure to file income tax returns was a violation of the defendant's constitutional rights, however, the court relied on the due process clause of the fifth amendment, not the right to counsel afforded by the sixth amendment. The holding of *Tarlowski* is clearly distinguishable from the allegations by defendant in the present case of violations of the sixth amendment. We also note that *Tarlowski* did not involve representation in court, unlike the case before us.

4. SDCL 16–18–1 provides:

> Excepting as provided by § 16–18–2, no person shall engage in any manner in the practice of law in the state of South Dakota unless such person be duly licensed as an attorney at law, and be an active member of the state bar in good standing. Any person engaging in any manner in the practice of law in violation of this section may be restrained by permanent injunction in any court of competent jurisdiction, at the suit of the attorney general or any citizen of the state.

that statute, absent a finding that a defendant has a constitutional right to such representation.

In addition to the fact that there is no precedent for us holding that the defendant has a constitutional right to lay counsel,

> [t]he problem with [defendant's] contention is obvious and becomes most apparent when carried to its logical conclusion. Allowing a defendant to have his own unlicensed counsel represent him out of respect for his right to manage his own defense under the Sixth Amendment would amount to a wholesale authorization of the lay practice of law. For the Court to recognize the right of a defendant to defend himself in his own person is one thing. It is quite another thing to allow him to bring unqualified and untrained people off the street to conduct his defense. *Turner v. American Bar Ass'n,* 407 F.Supp. 451, 478 (N.D.Tex. 1975).

Such a right is in direct competition with the public interest in ensuring the integrity of those who practice law as well as the public interest in an orderly and efficient criminal justice system.

Defendant's desire for lay representation conflicts with the public interest in regulating the conduct of those who seek to represent criminal defendants. Lawyers who are licensed to practice law are subject to codes and standards of conduct which are enforceable by revocation or suspension of that license. *See generally* SDCL 16–19. Each of the standards of conduct is necessary to the preservation and protection of the fundamental rights of litigants to fair trials. There is simply no way to ensure adherence by lay counsel to these standards of conduct, which are essential to a fair system of justice. A lay representative might not be sufficiently skilled to recognize and advance colorable defenses, or identify conflicts of interest, which may preclude zealous and competent representation. The issue then becomes whether the representation by lay counsel has been so inadequate that the defendant has been denied due process of law and his constitutional right to *effective* representation by counsel. By demanding his own lay counsel the defendant might then complain of denial of effective representation because of incompetence of counsel. This problem was recognized by the United States Supreme Court, which defendant quoted, when it stated:

> Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence. If that be true of men of intelligence, how much more true is it of the ignorant and illiterate, or those of feeble intellect. If in any case, civil or criminal, a state or federal court were arbitrarily to refuse to hear a party by counsel, employed by and appearing for him, it reasonably may not be doubted that such a refusal would be a denial of a hearing, and, therefore, of due process in the constitutional sense. *Powell v. Alabama,* 287 U.S. 45, 69, 53 S.Ct. 55, 64, 77 L.Ed. 158, 170–71 (1932).

South Dakota has recognized the impossibility of enforcing against laymen the standards of conduct applicable to attorneys. The response of the legislature to this problem was the enactment of statutes which outlaw the unlicensed practice of law. *See* SDCL 16–18–1. State legislatures and courts both have given strong endorsement to the public interest in requiring that only those with demonstrable legal skills and qualifications be permitted to enter a courtroom and argue cases on behalf of others. In oral argument, defendant referred to

recent criticism directed at lawyers in the United States, suggesting that some who appear in court lack the expertise needed to be effective trial lawyers. Defendant overlooks the fact that the remarks to which he referred were made, not to espouse an abolition of standards as defendant in effect does, but instead to urge that standards applicable to lawyers who appear in court be made even more strict than they are now.

■ Defendant's request in the present case also conflicts with the right of the people to the preservation of an orderly and efficient criminal justice system. One of the most effective means of protecting this right is through the inherent power of the courts to regulate the conduct of those who seek to practice law before them. *See* SDCL 16–19–1. This judicial power to regulate the qualifications of those who seek to practice law is an inherent power, which exists independently of statutes such as SDCL 16–19–1 under the well-established constitutional principle that each branch of the government has the power to accomplish objectives necessarily within that branch's orbit. *In re Brown,* 64 S.D. 87, 264 N.W. 521 (1936). A lawyer has the duty to advance only those arguments and defenses which are of at least colorable legal merit and validity. SDCL 16–18–15. No such duty can be imposed upon a non-lawyer, who, in most cases, lacks the research and analytical skills necessary to formulate any reasoned judgment of what is or is not a colorable argument or defense. The result is an increase in the length of trials, the clogging of an already overloaded judicial system, and a violation of the rights of other citizens to due process and a speedy trial. By granting defendant's request in the present case we would not only create a previously nonexistent right, but also thwart the fair, swift, and orderly administration of criminal justice. Defendant has no such right to infringe on the constitutional rights of others.

Although defendant alleged several additional errors by the trial court in this case, he developed no arguments in support of his assignments and cited no authority for his position.[5] We find such bare allegations of error to be without merit and improperly preserved for our consideration on appeal.

### CONCLUSION

■ Based upon the preceding analysis we conclude that the trial court did not err in denying defendant representation by lay counsel. The judgments of the trial courts are, therefore, affirmed.

All the Justices concur.

---

**5.** We note that defendant did discuss two of his assignments of error to a very limited extent, in his briefs and at oral argument. Defendant contends that the denial of his request for lay counsel was a violation of the right to work as provided by South Dakota law. S.D.Const., Art. VI, § 2; SDCL 60–8–3 and 60–8–4. The right to work law prohibits denial of work on account of membership or nonmembership in a labor union or labor organization. Defendant who is alleging denial of the right to work in this case has not been denied work. The statutory and constitutional provisions cited are totally inapplicable to the present fact situation. Defendant also contends that the rules and regulations promulgated by the secretary of public safety dealing with motor vehicle inspection certificates are not law. SDCL 32–21–2 and 32–21–6 clearly authorize the secretary of public safety to make such rules and regulations, however. Defendant's contention, therefore, is without merit.