STATE of South Dakota, Plaintiff and Appellee,

v.

Larry D. BUCHOLZ, Defendant and Appellant.

No. 15314.

Supreme Court of South Dakota.

Considered on Briefs Nov. 20, 1986.

Decided April 1, 1987.

Richard D. Coit, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Al Arendt of Maher & Arendt, Pierre, for defendant and appellant.

FOSHEIM, Retired Justice.

Larry D. Bucholz (Bucholz) was arrested November 8, 1985, for driving while under the influence. Approximately a week later he was again arrested for DWI. Bucholz was charged with the two DWIs and also as an habitual offender under SDCL 22–7–8. He agreed to plead guilty to the two DWI offenses in exchange for dismissal of the habitual offender charge. We reverse and remand.

Bucholz' sentencing hearing was held February 25, 1986, at 9 a.m. His employer testified Bucholz was a good worker and always sober while at work. Bucholz' ex-wife, Dawn Bucholz, testified that she and Bucholz had reconciled and had been living together for approximately three months prior to the date of sentencing. She also testified that to her knowledge Bucholz had not drank at all during that time. Also, prior to receiving testimony the judge related to the parties that an employee of Capital Area Counseling informed him that Bucholz had been enrolled in the counseling services' alcohol program, had good class attendance, and did a "good job" in the program.

Bucholz has a long history of alcohol-related criminal behavior. Although charged with only his second and third DWI, the court noted that Bucholz' "rap sheet" indicated the two present DWI convictions were apparently his sixth and seventh. This "rap sheet" contained many other entries of criminal conduct, which apparently were also alcohol related. Bucholz admitted to having been sentenced to the penitentiary on two occasions.

In light of Bucholz' history of alcohol abuse, the court inquired what he had done to change his drinking habits. Bucholz replied that after these two most recent DWI arrests, he had undergone alcohol abuse treatment for the first time. Relying upon this information, the court then pronounced five-month concurrent sentences in the Hughes County Jail. Furthermore, his driving privileges were revoked for a period of two years after his release. Bucholz was allowed work release.

Approximately one hour after the first sentencing hearing the judge called the parties back into the courtroom and made this announcement:

Immediately after the conclusion of the [prior] sentencing [hearing] ... the Deputy States Attorney, caught me in the hall and said that he wished that he would have read a case report that he had in his hand prior to the sentencing. [The report was issued in a criminal case being prosecuted against another defendant.] [T]he report was dated February 17th of 1986.... [It] indicates that Dawn Bucholz, who testified at the defendant's sentencing here today, had called the police on that date ... and indicated ... Mr. Bucholz, was driving a vehicle and was intoxicated and that they ought to investigate the matter.

The report went on to indicate that they had stopped the vehicle that had been identified; that apparently the defendant, Mr. Bucholz, was not driving the vehicle but was a passenger in the front seat.

The report doesn't indicate the state of the defendant's intoxication. However, I then called Officer Halling and asked him if, in his estimation, the defendant had been consuming alcoholic beverage prior to the time that he observed Mr. Bucholz on the 17th. And officer Halling's response was something to the effect that Mr. Bucholz was very drunk.

Again, I sentenced the defendant the way I did entirely because of the fact that it had been represented to me that he had not been consuming any alcoholic beverages. And in finding some evidence now, at least, that he has been consuming alcoholic beverages, I'm going to vacate the sentence of this court which was handed down just about an hour ago and intend to resentence the defendant. And I can tell you right now the sentencing will be more severe than the sentence previously [imposed].

The court then informed counsel that a further hearing would be held in which Bucholz would have an opportunity to controvert the matters revealed to the judge following the previous sentencing hearing.

The resentencing hearing was held approximately one week later. The State first called the officer who stopped Bucholz and the driver. He testified that Bucholz' speech was slurred, his breath had a strong odor of alcohol, his eyes were bloodshot, he had difficulty standing, and difficulty placing the key in the lock on the car's door. He testified that in his opinion Bucholz "definitely was intoxicated." Another policeman who arrived at the scene testified that Bucholz was staggering.

The State then called the dispatcher who took the call from the person identifying herself as Dawn Bucholz. He testified that the caller informed the police that the driver of Bucholz' car was very drunk.

Defense counsel then called Dawn Bucholz. She stood by her testimony given in the prior hearing that the defendant had been sober since they were back together. She was not asked whether she made the call to the police.

After hearing this testimony the court found the defendant had been drinking between his arraignment and sentencing, contrary to the evidence presented at the initial sentencing hearing. It also found that Dawn Bucholz did make the alleged call to the police the evening of February 17. Based upon these new factual findings, the court reinstated the five-month Hughes County jail sentence for the November 8th offense. On the latter offense, however, Bucholz was resentenced to two years in the South Dakota State Penitentiary. His driving privileges were again revoked for two years after his release.

The judge indicated he based his power to vacate the prior judgment in favor of a harsher one upon SDCL 23A–31–1 and *State v. Ford,* 328 N.W.2d 263 (S.D.1982). SDCL 23A–31–1 provides:

A court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided in this section for the reduction of sentence. A court may reduce a sentence:

(1) Within one year after the sentence is imposed;

(2) Within one hundred twenty days after receipt by the court of a remittitur issued upon affirmance of the judgment or dismissal of the appeal; or

(3) Within one hundred twenty days after entry of any order or judgment of the Supreme Court denying review of, or having the effect of upholding, a judgment of conviction;

whichever is later. A court may also reduce a sentence upon revocation of probation or suspension of sentence as provided by law. The remedies provided by this section are not a substitute for nor do they affect any remedies incident to post-conviction proceedings.

Bucholz correctly argues that the lower court could not rely on SDCL 23A–31–1 to modify his sentence. "[A] trial court may not use SDCL 23A–31–1 to increase the length of a sentence." *State v. Tibbetts,* 333 N.W.2d 440 (S.D.1983) (citing *Ford, supra* ). Furthermore, since there was nothing "illegal" about Bucholz' original sentence, SDCL 23A–31–1 did not apply to any attempted correction. *See* 8A J. Moore, Moore's Federal Practice ¶ 35.03[2] (2d ed. 1986); 3 C. Wright, Federal Practice and Procedure: Criminal § 582 (2d ed. 1982).

Since the trial court was unable to rely on SDCL 23A–31–1 in increasing Bucholz' sentence, its authority, if any, must come from another source. In *Ford*, this court reaffirmed its holding in *State v. Hughes*, 62 S.D. 579, 584, 255 N.W. 800, 802 (1934), that "as against an unwilling defendant, a valid sentence cannot be increased in severity after he has commenced the serving thereof...." *See also State v. Jackson*, 272 N.W.2d 102 (S.D.1978); *Ex parte Watt*, 73 S.D. 436, 44 N.W.2d 119 (1950). The State in this case argues that since the resentencing occurred only approximately one hour after his initial sentencing, Bucholz never began serving the first punishment prescribed. In *Ford*, however, we held a "sentence commences as soon as the prisoner suffers some confinement in the custody of a sheriff." 328 N.W.2d at 267. We note that at the close of the original sentencing hearing the trial judge ordered that Bucholz be "remanded to the custody of the sheriff to start serving the jail sentence." We can assume Bucholz was then in confinement. *See Ford, supra.*

Reversed and remanded to reinstate the original sentence.

MORGAN and SABERS, JJ., concur.

WUEST, C.J., and HENDERSON, J., dissent.

MILLER, J., not having been a member of the Court at the time this action was submitted to the Court, did not participate.

WUEST, Chief Justice (dissenting).

In *Ford*, this court followed the general rule that a *valid* sentence may not be increased once a defendant has commenced to serve that sentence. 328 N.W.2d at 267. *See also*, Annot., 26 A.L.R. 4th 905, 912 § 3 (1983). This court held that the oral sentence is the only sentence and courts are precluded from entering a written judgment that differs from the prior oral one. *Ford* also held that the sentence commences almost immediately after oral imposition of sentence; specifically, commencement begins with the trial judge's order

remanding the defendant to the custody of the county sheriff immediately following oral sentencing.

While I reserve criticism of the *Ford* case, I believe we should affirm the trial courts resentencing regardless of our holding in *Ford*. I agree that SDCL 23A–31–1 does not provide authority for the courts to increase a defendant's sentence when correcting an illegal sentence. *Ford, supra.* However, the statute does not *prohibit* a court from imposing a greater sentence, and *Ford* does not hold that a court may never vacate a void sentence and thereafter impose a greater sentence upon resentencing. This court has never held that a sentence can only be modified pursuant to a defendant's post-conviction remedy in SDCL 23A–31–1.

Numerous states now recognize that a state court which imposed an *unlawful* sentence retains authority to correct the sentence, regardless of whether the correction increased the sentence or whether the defendant had commenced serving the original sentence. *See* Annot. 28 A.L.R. 4th 147, 153 § 3 (1984). While the original sentence in this case was not *illegal*, the sentence was void because of the fraud committed upon the court. Therefore, the trial court should have jurisdiction to modify the sentence. Appellant's initial sentence which was procured as a result of fraud upon the court was a nullity, and the second sentencing did not run afoul of double jeopardy principles. *See, State v. Enfinger*, 722 P.2d 1170 (Mont.1986); *State v. Rushing*, 103 N.M. 333, 706 P.2d 875 (App. 1985); *Com. v. Bossche*, 324 Pa.Super. 1, 471 A.2d 93 (1984); *State v. Nardone*, 114 R.I. 363, 334 A.2d 208 (1975).

*Ford* only held that *valid* sentences may not be increased, and there was no fraud committed upon the court in that case. The rule permitting correction of void sentences applies where the defendant has begun to serve the original sentence. *Bozza v. United States*, 330 U.S. 160, 166–167, 67 S.C.t 645, 648–49, 91 L.Ed. 818 (1947); *United States v. Edmonson*, 792 F.2d 1492, 1496 (9th Cir.1986). In addition,

there is no double jeopardy, prohibition against correcting an invalid sentence even if such correction increases the punishment. *Bozza, supra; Edmonson, supra.* Increasing a defendant's sentence after service of the sentence has begun is not constitutionally prohibited by double jeopardy principles. *Pennsylvania v. Goldhammer*, 474 U.S. 28, 106 S.Ct. 353, 88 L.Ed.2d 183 (1985); *United States v. DiFrancesco*, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980). Therefore, this court should hold that the fraud made the first sentence invalid and the trial court could vacate and resentence based on the newly acquired facts even though under *Ford* appellant had already commenced serving his sentence.

HENDERSON, Justice (dissenting).

*State v. Tibbetts*, 333 N.W.2d 440 (S.D. 1983), and *State v. Ford*, 328 N.W.2d 263 (S.D.1982), are inapposite as fraud perpetrated on the court was not the issue in those cases. Appellant perpetrated a fraud on the court and should not be the benefactor of his own wrongdoing. We cannot tolerate or condone perjury or misrepresentations made to trial judges to secure more lenient sentences.

Inherently, a court has the power to deal with fraud perpetrated upon it. Were this not so, a court could become a victim of fraud rather than a dispenser of justice. Is the present sentence "unlawful," "illegal," or "invalid"? I would hold that the sentence is invalid because of fraud perpetrated upon the trial court and thus I would affirm the trial court and specially join the writing of Chief Justice Wuest.

A trial court, in administrating justice, has heavily affixed unto it great responsibilities in doing the right thing. Inherently, abiding within the trial courts is a power to administer justice so as to promote justice and not defeat its true purposes. One of its most manifest acts is to sentence criminal defendants. Criminal defendants cannot come into a court of law asking for mercy or justice, with a platform of prevarication and deception.

It is a basic demand upon any judge to both interpret and uphold the law. He or she must uphold legal rules that meet certain standards of justice. Legal rules must not be mechanically applied. Justice cannot be blind to realism and, in my opinion, this Court cannot shut its eyes to the fact that this criminal defendant prevaricated to obtain a sentence which the trial judge originally pronounced. Within the inherent power of the trial court, there arose a resentment and righteous indignation because a fraud was perpetrated in a court of law over which he presided. These were legitimate virtues and a correct extension was to rectify an error committed by him by virtue of the fraud perpetrated upon the court over which he presided. The trial court apparently desired to restore a certain righteousness in his courtroom. Born of a desire to administer justice in a fair, correct, and equal manner, he saw fit to resentence this defendant. Thus, he was fulfilling a role, as he saw his duty, of upholding the law.

At best here, this defendant would proclaim a procedural injustice. He is saying, "You sentenced me once, but you cannot sentence me again." However, the judge sentenced him from a set of facts which were untrue. Logically, the sentence was based on a false premise created by appellant. Approximately one hour after pronouncement of the original sentence, the trial judge conducted a further hearing and thereupon resentenced the defendant. Time is critical to our considerations in litigation, but in this case, it is extremely critical. This trial judge, immediately after leaving the courtroom, was furnished with facts establishing, at face value, that appellant and his wife had presented sworn, false testimony. Immediately, this trial judge initiated procedures for a hearing to determine if a fraud had been committed in a court of law over which he presided. True facts were then brought forth and, based upon true facts, the trial judge resentenced. Sentence was pronounced by virtue of fraudulent misrepresentations of appellant and sentence was withdrawn

once this fraud was discovered. There is room in the *Ford* decision for my concept of a "valid sentence." In *Ford*, 328 N.W.2d at 267, it was stated: " '[A]s against an unwilling defendant, a valid sentence cannot be increased in severity after he has commenced the serving thereof....' " (Citation omitted.) For collateral support, I refer the reader to a treatise authored by Wayne LaFave and Jerold Israel, *Criminal Procedure* § 25.2, at 133 (1984), wherein the writers express:

> [T]he increase by a trial judge of a previously imposed sentence is not unheard of, and the Supreme Court's recent teaching that "a sentence does not have the qualities of constitutional finality that attend an acquittal," grounded in part in the observation that at common law the "trial court's increase of a sentence, so long as it took place during the same term of court, was permitted," strongly suggests that conferral of a power to increase would be constitutional. (Citation omitted; footnotes omitted.)

This generic declaration I cannot completely subscribe to, but a fraud perpetrated on a trial judge to obtain leniency would surely be a commonsense exception to the general rule enunciated in *Ford*.

The doctrine of inherent power of the courts is not unknown in South Dakota jurisprudence. Research reveals, back to 1960, some nine cases wherein the inherent power of the court is enunciated in one way or another. Some twenty-eight cases in this Court, since 1952, collaterally touch upon this doctrine. More pointedly, although not in the exact context of the facts at hand, I urge the reader to refer to the following criminal cases where inherent power of the court is discussed. *State v.*

*Means,* 268 N.W.2d 802 (S.D.1978); *State v. Peterson,* 266 N.W.2d 103, 109 (S.D.1978) (citing *In re Brown,* 64 S.D. 87, 264 N.W. 521 (1936)).*

Lastly, I wish to express that procedural justice is subordinate to substantive justice. If the courts of law devise a standard or rule of justice, it must inordinately follow that these standards or rules of procedure result in a just decision or outcome. We should vault the substantive law and the fair administration of justice in this case over procedural justice which is, in a broad spectrum, a subordinate type of justice.

---

* In *Means,* we wrote "a trial judge has an inherent power, as well as a duty, to conduct a *fair* and orderly trial." 268 N.W.2d at 808 (emphasis added; footnote omitted). In *Peterson,* we expressed that the people of the State of South Dakota have a right to the "preservation of an orderly and efficient criminal justice system." 266 N.W.2d at 109. Additionally, "each branch of the government has the power to accomplish objectives necessarily within that branch's orbit." *Id.* (citing *In re Brown,* 64 S.D. 87, 264 N.W. 521 (1936)). *See* 20 Am.Jur.2d *Courts* § 78 (1965), where inherent powers of the court are referred to as those powers "included within the scope of a court's jurisdiction which a court possesses irrespective of specific grant by constitution or legislation. Such powers can neither be taken away nor abridged by the legislature." (Footnotes omitted.) *See also State v. Becker,* 351 Mo. 769, 174 S.W.2d 181 (1943); *Ex parte Wetzel,* 243 Ala. 130, 8 So.2d 824 (1942); 21 C.J.S. *Courts* § 86 (1940).