## In the Matter of the Application of Stephen G. GROSH for a Writ of Habeas Corpus.

### No. 15606.

Supreme Court of South Dakota.

Argued April 22, 1987.

Supplemental Briefs Filed Sept. 9, 1987.

Decided Nov. 25, 1987.

---

Terry L. Hofer of Bangs, McCullen, Butler, Foye, and Simmons, Rapid City, for applicant.

Janine Kern, Asst. Atty. Gen., Pierre, for respondent State; Roger A. Tellinghuisen, Atty. Gen., on brief.

## ORIGINAL PROCEEDING

SABERS, Justice.

This is an application for a writ of habeas corpus to the South Dakota Supreme Court pursuant to SDCL ch. 21–27. The general background of this case is set forth in *State v. Grosh*, 387 N.W.2d 503 (S.D.1986). The specific findings of fact and the referee's recommendations in this matter are in file # 15606.

## FACTS

As found by the referee, the facts show that Stephen R. Grosh (Grosh) was sentenced to five years in the South Dakota State Penitentiary on December 5, 1984. Grosh appealed his sentence to this court. On May 7, 1986, this court affirmed his conviction. On May 29, 1986, Grosh filed a motion in circuit court (court) to reduce his sentence pursuant to the provisions of SDCL 23A–31–1.* A hearing was held on June 11 and 17, 1986. The court modified this sentence on June 23, 1986, nunc pro tunc to June 11, 1986, as follows:

1. That the Applicant be on probation for a period of three (3) years from this date;

2. That the Defendant serve one (1) year in the county jail and shall be permitted to serve that time in the Morrill County Jail, Bridgeport, Morrill County, Nebraska, with work release authorized consistent with rules of that facility;

3. That the Defendant obey all laws and remain on his good behavior;

---

* SDCL 23A–31–1 provides in part:

... A court may ... reduce a sentence....
(1) Within one year after the sentence is imposed;
(2) Within one hundred twenty days after receipt by the court of a remittitur issued upon affirmance of the judgment or dismissal of the appeal; or
(3) Within one hundred twenty days after entry of any order or judgment of the Supreme Court denying review of, or having the effect of upholding, a judgment of conviction; whichever is later....

4. That the Defendant fully cooperate with the Court Services Department in all reasonable requests and recommendations;

5. That there be a judgment entered in the sum of $10,000.00 as restitution for investigative costs, said judgment to be in favor of the State Drug Enforcement Unit, Division of Criminal Investigation, Pierre, South Dakota;

6. That the Defendant pay the restitution upon a schedule to be set up with his Court Services Officer and approved by the Court;

7. That the Defendant submit his person to a test of his blood, urine or other bodily specimens at any time that he is requested to do so by any law enforcement office or court services officer and that he refrain from the use [or] consumption of any illegal drugs or substance;

8. That the Defendant submit his person, vehicle and home to a warrantless search to determine whether or not he is complying with the above provisions;

9. That the Defendant perform 100 hours of community service per year during the three (3) year period of the suspension upon a schedule approved by his Court Services Officer; and

10. That the Defendant surrender himself to the Morrill County Jail on or before 5:00 o'clock P.M. on the 23rd day of June, 1986, to commence service upon the sentence [and] that he be given credit for 21 days previously served in the Fall River County Jail and State Penitentiary on this file.

Grosh was living in Bridgeport, Nebraska at the time his sentence was modified on June 23, 1986. Supervision of Grosh's probation was not transferred to the state of Nebraska, but was retained by the Seventh Judicial Circuit court service officer and the court in South Dakota. Grosh was accepted for a work release program by Sheriff Sterkel of the Morrill County Jail, Bridgeport, Nebraska on June 11, 1986.

In June 1986, the court indicated to Sheriff Sterkel by telephone that it wanted pretty strict guidelines on Grosh, that it did not want him running back home, and that it wanted the sentence to be uncomfortable. Grosh commenced serving his jail time on work release under such terms and conditions that were consistent with the policies of the Morrill County Jail, which included spending from 1:00 p.m. to 5:00 p.m. daily in the Morrill County Jail. Grosh spent the remaining hours of the day either working at the convenience store, the restaurant, or the motel at Bell's Restaurant, or sleeping. No telephone calls were received by Sheriff Sterkel in July, August, September, October or November of 1986 from either the court or the court service officer. In November, Sheriff Sterkel indicated to Grosh that it would accommodate the sheriff if Grosh did not come in for work release for three days in November of 1986 because he had staffing problems and no deputies available. In December of 1986, Sheriff Sterkel received a telephone call from the court indicating that it was upset that Grosh was spending less time in jail than it had wanted. Sheriff Sterkel indicated that Grosh would be spending more time in jail.

In addition, the court advised the court service officer that it wanted to know if Grosh was paying restitution in this matter. The court service officer wrote to Grosh concerning a plan for paying the court ordered restitution of $10,000. Grosh wrote back with his restitution plan which indicated that he could only pay $50 per month because he was required to pay $25 per day for each day that he spent in jail on work release from June 11, 1986. When the court service officer brought Grosh's restitution plan to the judge, he indicated that a review hearing should be scheduled to evaluate the arrearages on the restitutionary amount of $10,000. This hearing was scheduled for December 5, 1986, in the Fall River County Courthouse.

At the hearing the judge indicated that he was concerned as

[T]here does not appear to be any effort being made at this time to pay on the arrearages—the ten thousand Dollars that has been ordered by this Court to be paid by the Defendant, as well as reviewing the circumstances as they exist at this time.

During the hearing, it became apparent to the court that the work release was not in accordance with some preconceived notion of work release the court had in mind, but was within the four corners of the order modifying sentence. The court indicated that the work release program was more of a priority than establishing a clear amount of paying the obligation owed by Grosh. The court further indicated that Grosh did not have an ownership interest in the Bell Restaurant, and that Grosh had misrepresented this to the court at the prior hearing. The court concluded that there was an abuse of the court order and felt that the just approach would be to deny Grosh any further work release.

The court then ordered Grosh to have work release ten hours only per day effective December 5, 1986 through December 27, 1986, and that Grosh's work release privileges be completely terminated as of December 28, 1986. On December 27, 1986, Grosh was returned to the Fall River County Jail to serve his jail sentence fulltime until January 15, 1987, when he was granted bail by the Supreme Court.

## REFEREE'S FINDINGS

The referee found that the work release plan designed by Sheriff Sterkel was in compliance with the order modifying sentence of June 23, 1986, and that there was nothing in the order which provided that the applicant had to spend all of his nonworking hours in jail; that any special conditions, terms or limitations as to work release should be contained within the court order, or the general policy controls of the sheriff; that the three days in November of 1986 which Grosh did not serve in jail were caused by staffing problems within the jail and not by Grosh; and that the responsibility for informing the court of this staff problem belonged to the sheriff, the court, and the court service officer, not Grosh.

The referee further found that Grosh did not have sufficient funds to pay off the restitution judgment after paying $25 per day to Morrill County for the work release privilege, which amounted to $775 per thirty-one day month; that there was no approval of the restitution schedule by the court, the court service officer, or any approval of the schedule concerning community service hours; and that there was an ownership interest by Grosh in the Bell's Restaurant and property providing that he can generate sufficient money to pay off the mortgage on the property.

## REFEREE'S CONCLUSIONS

The referee concluded that Grosh did not violate the work release provision because he had no prior notice that the work release provisions of the order modifying sentence of June 23, 1986 were to be evaluated by the court, and that the elimination of the work release provision was an increase in Grosh's sentence in violation of SDCL 23A–31–1. *State v. Ford*, 328 N.W.2d 263 (S.D. 1982); *see also State v. Garvin*, 329 N.W. 2d 621 (N.D.1983). SDCL 23A–31–1 is our adoption of Federal Rule of Criminal Procedure 35.

The referee concluded that the December 5, 1986, sentence was not a correction of either an illegal sentence under SDCL 23A–31–1 or a clerical matter under SDCL 23A–31–2, and found no merit in the defenses of the returnees to the writ of habeas corpus. The referee made numerous other recommendations toward amending the sentence, all of which would have substantially benefitted Grosh.

## DECISION

██ For the reasons set forth above, we adopt the referee's findings of fact in their entirety. We agree that the elimination of the work release provision was an increase in Grosh's sentence in violation of SDCL 23A–31–1. A trial court may not use SDCL 23A–31–1 to increase the length of sentence. *State v. Tibbetts*, 333 N.W.2d 440, 441 (S.D.1983); *Ford, supra.* It was

error for the trial court to revoke the work release without notice based on a misunderstanding of the terms of the work release duties as administered by the sheriff. This is especially so when these misunderstandings were caused in part by the court's failure to specify the terms of the work release in writing. Therefore, the revoking of the work release was an impermissible augmentation of sentence. To do this without notice was also a violation of due process. *State ex rel. Djonne v. Schoen*, 299 Minn. 131, 217 N.W.2d 508 (1974) (Due process requires that notice and a hearing be afforded before revocation of work release); *State ex rel. Kaus v. McManus*, 306 Minn. 487, 238 N.W.2d 597 (1976).

Accordingly, we remand to the trial court for reinstatement of this sentence as it existed on December 5, 1986, in all respects, with appropriate credits for time served, restitution paid, if any, and such other modifications not inconsistent with this opinion. In addition, the trial court may specify, in writing, more detailed terms of the work release, restitution, and other provisions of the sentence so long as such specifications are not inconsistent with the letter and spirit of the modification of sentence dated June 23, 1986, and this decision.

MORGAN, J., concurs.

HENDERSON, J., concurs in result.

MILLER, J., concurs in part and dissents in part.

WUEST, C.J., dissents.

HENDERSON, Justice (concurring in result).

In *State v. Oban*, 372 N.W.2d 125 (S.D. 1985), this author attempted to distinguish the concepts of probation, suspended sentences, and parole. In discussing the constitutional and statutory provisions pertaining thereto, in a four-one majority opinion, this Court specifically recognized SDCL 23A-27-19 as one of the three instances where circuit courts maintain jurisdiction and control in the sentencing context. *Oban*, 372 N.W.2d at 129; SDCL §§ 23A-27-18.1, -18.2, -19; SDCL 23A-31-1.

The historical "creative sentences" of the Seventh Judicial Circuit continue to foster appeals to this Court and a great consumption of judicial resources of the Highest Court in this State.

I am convinced that the writ of habeas corpus should be granted in this case. To me, more important than anything else in this case, Grosh (1) did not violate his work release and (2) was entitled to basic procedural due process, i.e., notice and opportunity to be heard, apprising Mr. Grosh that his work release was subject to revocation. *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

Grosh is entitled to his freedom and the $2,500 cash bail bond, herein posted, be returned to Grosh by the Clerk of this Court. In my opinion, the referee served this Court well and often findings of fact and conclusions of law are mixed; however, the work product presented to this Court is extremely helpful. I do not perceive the opinion of Justice Sabers as second-guessing, in advance, the judgment of Judge Tice as he sets about fulfilling the judgment of this Court. We are not interfering with the supervision of probation, nor are we monitoring probation, as suggested by one of the special writings, by addressing relief requested under the Habeas Corpus Act. Indeed, it is true that Grosh was improperly incarcerated because of improper procedures below and he is entitled to a remedy. Surely, the majority opinion of Justice Sabers has not explicitly set forth the details of Judge Tice's future judgment herein.

MILLER, Justice (concurring in part and dissenting in part).

I concur with that part of the majority opinion holding that the trial court improperly revoked Grosh's work release. However, I dissent from the ultimate result which fully reinstates the modified sentence and which, at least impliedly, prohibits the trial court from examining Grosh's prior conduct to ascertain, in an appropriate proceeding, whether work release should be revoked for such conduct.

Initially, I should state that I disagree with the majority's interchangeable use of the words "modification" and "reduction." The terms are not synonymous. However, under the facts of this case, the "modification" was a "reduction." There are other cases where that would not necessarily be true.

I further agree with the majority that the trial court had the authority to enter its Order Modifying Sentence on June 23, 1986. Irrespective of how it is styled, the trial court had jurisdiction to *either* suspend the sentence under SDCL 23A–27–18, 19 (which the State concedes) or to reduce it under SDCL 23A–31–1 (which the State also concedes). In either event, the result is a "modification" as prayed for and ordered.

In my view, Grosh and the majority tend to overlook (or give slight shrift to) the *true* error made by Judge Tice which caused this dilemma, namely that he modified the terms and conditions of probation without notice and without good cause shown as required by SDCL 23A–27–20.1. Further, he could arguably be accused of revoking probation (or an important term of probation) without following the appropriate due process safeguards of SDCL 23A–27–20 as interpreted by this court in *State v. McCormick*, 385 N.W.2d 121 (S.D. 1986); *State v. Ellefson*, 334 N.W.2d 56 (S.D.1983); *State v. Olson*, 305 N.W.2d 852 (S.D.1981).

Rather than following appropriate procedures, Judge Tice, sua sponte conducted a "review hearing," (a proceeding foreign to our statutes and this author.) Apparently, Grosh and his attorney were directed, via the court services officer, to appear before Judge Tice to review the probationary situation. When they appeared before the judge, he initially reviewed with them Grosh's financial condition, coupled with restitution issues. Judge Tice then indicated that he was perturbed over recent developments indicating that his work release intentions had not been followed, that work release was a priority issue (to Judge Tice), and since he (Judge Tice) was considering revoking work release he suggested

a recess to afford defendant an opportunity to make some proposals (the State took no position). After the recess (of approximately one hour) and upon hearing the various comments by defendant and his counsel, Judge Tice again indicated that he was disappointed that Grosh had abused the opportunity of work release and, since Grosh had failed to comply, the only approach was to revoke work release. No testimony or other evidence was presented. The entire proceeding was a colloquy between the court, Grosh and counsel. The procedures of the "review hearing" totally ignored due process safeguards. As a result, revocation of work release was improper. SDCL 23A–27–20, 20.1; *McCormick, supra; Ellefson, supra; Olson, supra.*

Although the findings of the referee may be generally accurate as to most of the facts surrounding the merits of whether work release should have been revoked, I cannot accept them in toto (note that several of the findings are, in reality, conclusions of law (e.g. XXVI, XXXIV, XXXV, XXXVII, XLI, XLIV, XLV, XLVI, and XLVIII)). Remember also that these were facts which Judge Tice (through his own fault) had no opportunity to hear.

In my view, trial courts should have an opportunity to monitor and supervise probation without interference from us, whether we are acting as a habeas corpus or appellate court, assuming proper procedures and legal precedent are followed. From my reading of the habeas corpus chapter (SDCL ch. 21–27), I conclude that our role here is to determine whether the defendant is improperly incarcerated because improper procedures were followed (SDCL 21–27–16(2) and (3)). Our function is not to modify a sentence or to re-sentence a defendant.

Therefore, although I agree that the order entered by Judge Tice revoking the work release is a nullity and that the June 23, 1986, order should be reinstated as it existed prior to December 5, 1986, I would not prohibit Judge Tice from conducting an additional hearing, following the appropriate procedural steps, to determine whether

the work release conditions had been previously violated.

WUEST, Chief Justice (dissenting).

The Court sentenced defendant to five years in the South Dakota State Penitentiary on December 5, 1984. On June 23, 1986, he entered the following order which provided, among other things, the following:

*IT IS HEREBY ORDERED that the penitentiary sentence previously imposed by this Court of five (5) years, be, and the same is hereby suspended upon the following terms and conditions.*

1. That the Defendant be on probation for a period of three (3) years from this date;

2. That the Defendant serve one (1) year in the county jail and shall be permitted to serve that time in the Morrill County Jail, Bridgeport, Morrill County, Nebraska, with work release authorized consistent with the rules of that facility[.]

Contrary to the assertion of the majority opinion, it is obvious the court suspended the execution of the five-year sentence pursuant to SDCL 23A–27–18 rather than reduce the sentence under the provisions of SDCL 23A–31–1. There is a substantial difference. He had jurisdiction to reduce the sentence but not suspend execution. Under the provisions of SDCL 23A–27–19 the Court retains jurisdiction for the purpose of suspending sentence for a period of *one year from the effective date of the judgment of conviction,* notwithstanding the fact that the time from an appeal from such judgment is limited to a shorter period of time.

Since more than a year passed from the effective date of the judgment, the trial court had no jurisdiction to suspend execution of the sentence. *State v. Huftile,* 367 N.W.2d 193 (S.D.1985); *State v. Means,* 268 N.W.2d 802 (S.D.1978). Nor did the trial court have any authority to imprison the defendant in county jail for one year. He was limited to six months by the provisions of SDCL 23A–27–18.1. The entire order entered by Judge Tice on June 23, 1986, is null and void because he did not have jurisdiction to enter the order suspending execution of sentence. The sheriff is holding the defendant under a void order, and the defendant should be returned to the penitentiary to complete the balance of his sentence with credit for the time served under the void order which should be computed by Judge Tice.