1996 SD 114

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Ricky Jay SIELER, Defendant and Appellant.**

No. 19150.

Supreme Court of South Dakota.

Argued March 12, 1996.

Decided Sept. 4, 1996.

Rehearing Denied Oct. 9, 1996.

Mark Barnett, Attorney General, Jason M. Harris, Assistant Attorney General, Pierre, for plaintiff and appellee.

Timothy J. Langley, Sioux Falls, for defendant and appellant.

AMUNDSON, Justice.

[¶ 1] Ricky Jay Sieler (Sieler) appeals his sentence for kidnapping, attempted first-degree murder, second-degree rape, first-degree burglary, and aggravated assault. We affirm.

**FACTS**

[¶ 2] Victim claims she was raped and assaulted by Sieler, her former boyfriend, in her Sioux Falls apartment on the morning of June 24, 1994. Victim's wrist, arm, stomach and throat sustained serious lacerations. During this ordeal, Victim alleges that Sieler threatened to kill her and himself.

[¶ 3] A jury trial commenced on January 9, 1995. The jury found Sieler guilty of attempted first-degree murder (SDCL 22–16–4 and 22–4–1),[1] kidnapping (SDCL 22–19–1),[2] second-degree rape (SDCL 22–22–1(2)),[3]

---

1. SDCL 22–16–4 provides:
   Homicide is murder in the first degree when perpetrated without authority of law and with a premeditated design to effect the death of the person killed or of any other human being, or when committed by a person engaged in the perpetration of, or attempt to perpetrate, any arson, *rape*, robbery, *burglary*, *kidnapping* . . . . (Emphasis added.)
   SDCL 22–4–1 states:
   Any person who attempts to commit a crime and in the attempt does any act toward the commission of the crime, but fails or is prevented or intercepted in the perpetration thereof, is punishable where no provision is made by law for the punishment of such attempt, as follows:

   (5) If the attempted crime is punishable by a sentence of life imprisonment or if the attempted crime is punishable by imprisonment in the state penitentiary for a minimum number of years and no maximum punishment is provided, the offender convicted of any such attempt may be punished as if he were guilty of a Class 2 felony [maximum of twenty-five years in the state penitentiary and a $25,000 fine].

2. Under SDCL 22–19–1, kidnapping is defined as:
   Any person who shall seize, confine, inveigle, decoy, abduct or carry away any person and hold or detain such person . . . for any of the following reasons:

   (3) To inflict bodily injury on or to terrorize the victim or another . . .
   is guilty of kidnapping. Kidnapping is a Class 1 felony [maximum life imprisonment in the state penitentiary and $25,000 fine], except if the person has inflicted a gross permanent physical injury on the victim, in which case it is a Class A felony [punishable by death or life imprisonment in the state penitentiary, a lesser sentence may not be given for a Class A felony].

3. Sexual penetration through the use of force, coercion or threats of immediate and great bodily harm is classified as rape in the second degree, a Class 2 felony.

first-degree burglary (SDCL 22–32–1(3)),[4] and aggravated assault (SDCL 22–18–1.1(2)),[5] all stemming from the June 24, 1994, attack on Victim. Sieler was sentenced to serve consecutively twenty-five years on the attempted murder conviction, twenty-five years on the rape conviction, twenty-five years on the burglary conviction, and thirty years on the kidnapping conviction, for a total of one hundred five years. In addition, Sieler was sentenced to fifteen years on the aggravated assault conviction, to be served concurrently with the twenty-five years for attempted murder. Each written judgment and sentence denoted that all of the offenses were separate transactions.

[¶ 4] Sieler claims that there was no mention by the sentencing court at the original sentencing that all of the offenses were separate transactions. Since the offenses were classified as separate transactions, Sieler must serve twenty-seven years before he is eligible for parole instead of thirteen and one-half years. Sieler moved to have his sentence corrected pursuant to SDCL 23A–31–1 (Federal Rule 35)[6] and 23A–27–4.1,[7] at which time the sentencing court upheld its earlier decision as to classifying the kidnapping, rape and burglary as separate offenses

4. First-degree burglary is committed by:

   Any person who enters or remains in an occupied structure, with intent to commit any crime therein, is guilty of first degree burglary when:

   .    .    .    .    .

   (3) The offense is committed in the nighttime. First degree burglary is a Class 2 felony.

5. SDCL 22–18–1.1 states:

   Any person who:

   .    .    .    .    .

   (2) Attempts to cause, or knowingly causes, bodily injury to another with a dangerous weapon;

   .    .    .    .    .

   is guilty of aggravated assault. Aggravated assault is a Class 3 felony [maximum punishment is fifteen years imprisonment in the state penitentiary and $15,000 fine].

6. SDCL 23A–31–1 provides:

   A court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided in this section for the reduction of sentence. A court may reduce a sentence:
   (1) Within one year after the sentence is imposed;

and had the State redraft the attempted murder and aggravated assault judgments into one criminal transaction.

[¶ 5] Sieler appeals,[8] raising the following issues:[9]

I. Whether the addition of the words "separate transactions" to the written judgments and sentences illegally impose an enhanced sentence?

II. Was the sentencing as "separate transactions" illegal?

## ARGUMENT

■ [¶ 6] The two issues presented by Sieler both challenge his sentence. The first issue asserts that the sentence was illegally imposed. "Sentences imposed in an illegal manner are within the relevant statutory limits but are imposed in a way which violates defendant's right" to not have his sentence enhanced once the defendant has left the judicial branch of government and is within the jurisdiction of the executive branch. 8A J. Moore, Moore's Federal Practice ¶ 35.04[3][a] (2d Ed. 1995); *see State v. Bucholz*, 403 N.W.2d 400, 403 (S.D.1987); *State v. Oban*, 372 N.W.2d 125, 129 (S.D.1985);

   (2) Within one hundred twenty days after receipt by the court of a remittitur issued upon affirmance of the judgment or dismissal of the appeal; or
   (3) Within one hundred twenty days after entry of any order or judgment of the Supreme Court denying review of, or having the effect of upholding, a judgment of conviction;
   whichever is later. . . .

7. SDCL 23A–27–4.1 provides:
   Within a reasonable time but not more than one year after final judgment, a court on motion of a defendant or upon its own motion may relieve a defendant from final judgment if required in the interest of justice.

8. Sieler's appellate counsel did not represent him at the trial level.

9. Originally, Sieler's appeal claimed that his conviction for both attempted first-degree murder and aggravated assault stemming from the same episode violated the double-jeopardy clause of the state and federal constitutions. In his reply brief, Sieler conceded that these convictions did not violate his constitutional right against double jeopardy. *See United States v. Dixon*, 509 U.S. 688, 704, 113 S.Ct. 2849, 2860, 125 L.Ed.2d 556, 573 (1993).

*State v. Ford,* 328 N.W.2d 263, 267 (S.D. 1982).

▪ [¶ 7] The second issue maintains that, even if the sentence was not illegally imposed, the sentence is illegal in and of itself because the offenses may not be termed as separate transactions. " '[I]llegal sentences are essentially only those which exceed the relevant statutory maximum limits or violate double jeopardy or are ambiguous or internally contradictory.' " *State v. Thomas,* 499 N.W.2d 621, 622 (S.D. 1993) (quoting 8A J. Moore, Moore's Federal Practice § 35.06(a) (2d Ed. 1992) (now found at § 35.04[3] (2d Ed. 1995))).

## DECISION

[¶ 8] **I. Whether the addition of the words "separate transactions" to the written judgments and sentences illegally impose an enhanced sentence?**

▪ [¶ 9] Sieler was sentenced to a total of one hundred five years for the crimes he committed against Victim. Since the sentencing court pronounced that the kidnapping, rape and burglary were separate offenses, in addition to the offenses of attempted first-degree murder and aggravated assault, he is considered to have committed three or more felonies. Prior to this conviction, Sieler had not been convicted of a felony. Because Sieler is considered to have committed three or more felonies, his parole eligibility date is twenty-seven years compared to thirteen and one-half years if he was a first-time felon. *See* SDCL 24–15–7 and 24–15–5.[10] Sieler claims the sentencing court did not make this clear during oral sentencing and,

therefore, cannot enforce the convictions as separate transactions.

▪ [¶ 10] It is a well-established rule that a sentencing court cannot increase a valid sentence after the defendant has commenced serving the sentence. *Ford,* 328 N.W.2d at 267. However, Sieler's **sentence** was not enhanced or increased. The issue is whether Sieler's parole was illegally enhanced or increased.

[¶ 11] Reviewing the oral sentencing transcript, it is clear that the sentencing court intended for these convictions to be separate transactions.

In determining what is a proper time of incapacitation and in determining what is a proper punishment in this case, I think the Court has to look at the crimes that [Sieler] was convicted of by the jury *individually.* ·

. . . [U]nder the current parole guidelines, that will make [Sieler] eligible for parole, if he makes parole, when he is old enough to draw Social Security. And it's my opinion that at that time he should no longer be a significant danger to women [with whom he is involved]. . . . [M]y 20–some years in the criminal field has taught me that the type of crime committed here is normally committed by a gentleman under the age of 60. Therefore, in my opinion, this sentence serves the purpose of punishing [Sieler] to the extent that the law would permit, and it also incapacitates him until such time as I believe he would no longer be dangerous to women in which he has a relationship.

---

10.  SDCL 24–15–7 states:

In the determination of an inmate's eligibility for consideration for parole, two or more convictions arising from the same transaction, for which the sentences are made to run consecutively, shall be considered as one conviction. Two or more sentences arising from different transactions for which the sentences are made to run consecutively shall be considered as separate convictions. In determining the eligibility date for a person receiving two or more sentences which are made to run consecutively, the sentences shall be added together and the total number of convictions shall then determine the total amount of time to be served before becoming

eligible for consideration for parole subject to the provisions of § 24–15–5.
SDCL 24–15–5 provides:
A person is eligible for parole . . . after deducting from his sentence the statutory time granted for good conduct pursuant to § 24–5–1:
(1) If convicted of a felony for the first time, when he has served one-fourth of the time remaining;
(2) If convicted of a felony for the second time, when he has served three-eighths of the time remaining; or
(3) If convicted of a felony three or more times, when he has served one-half of the time remaining.

Sieler was thirty-four years old at the time of sentencing. Using Sieler's argument, he would be eligible for parole at the age of forty-seven. It was clear that the sentencing court intended Sieler to serve time until retirement age, which is approximately sixty. By classifying the convictions as separate transactions, this goal is accomplished. The sentencing court clearly indicated it was treating the offenses individually or separately.

[¶ 12] In addition, even if the sentencing court was not patently clear at the oral sentencing as to its intent, there is guidance to interpret the intent. An orally pronounced sentence does control over the written judgment, however, if the verbal sentence is not clear, the intent of the sentencing court may be construed from the entire record. *State v. Johnston*, 478 N.W.2d 286, 288 (S.D. 1991); *see also* 8A J. Moore, Moore's Federal Practice § 36.02 (2d Ed. 1995); *United States v. Tramp*, 30 F.3d 1035, 1037 (8th Cir. 1994). Examining the entire record leads to one conclusion: the sentencing court intended for the offenses to be punished as separate transactions.

[¶ 13] Finally, SDCL 24–15–1.1 states:

Parole is the *discretionary* conditional release of an inmate from actual penitentiary custody before the expiration of his term of imprisonment. The prisoner remains an inmate under the legal custody of the department of corrections until the expiration of his term of imprisonment. A prisoner is not required to accept a conditional parole. *A prisoner is never entitled to parole.* However, parole may be granted if in the judgment of the board of pardons and paroles granting a parole would be in the best interests of society and the prisoner.

*Neither this section or its application may be the basis for establishing a constitutionally protected liberty, property or due process interest in any prisoner.* (Emphasis added.)

The United States Supreme Court has specifically held that a convicted person has no constitutional right to parole. *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 7, 99 S.Ct. 2100, 2104, 60 L.Ed.2d 668, 675 (1979);

*see also Winters v. Solem*, 444 N.W.2d 722, 724 (S.D. 1989). Sieler's sentence was not increased by the words "separate transaction," only his parole eligibility is affected by these words.

**[¶ 14] II. Was the sentencing as "separate transactions" illegal?**

[¶ 15] Alternatively, Sieler argues that the sentencing court erred as a matter of law by describing the four convictions as separate transactions. Specifically, he alleges that, since the offenses all occurred during a short period of time at one place to one victim, he cannot have committed separate offenses.

[¶ 16] To evaluate Sieler's claim, we will start by analyzing SDCL 22–6–6.1. This is a matter of law to be reviewed *de novo*. *State v. Karp*, 527 N.W.2d 912, 913 (S.D. 1995). SDCL 22–6–6.1 provides:

If a defendant has been convicted of two or more offenses regardless of when the offenses were committed or when the judgment or sentence was entered, the judgment or sentence may be that the imprisonment on the subsequent conviction may run concurrently with the imprisonment on any prior conviction or the imprisonment for the subsequent offense may commence at the expiration of the imprisonment upon any other offense.

SDCL 22–6–6.1 is "specific on its face and ... it allows for consecutive sentences 'regardless of when the offenses were committed or when the judgment or sentence was entered.'" *State v. Swallow*, 405 N.W.2d 29, 43 (S.D. 1987) (quoting SDCL 22–6–6.1). This clear and unambiguous language allows the sentencing court to impose sentences consecutively and does not limit the scope as to what may be a separate transaction. Sieler concedes that consecutive sentences may be imposed for these offenses, however, he argues that the sentences may not be designated as separate transactions. There is no definition of separate transactions in the criminal statutes or the parole statutes.

[¶ 17] The evidence of what transpired during this nightmarish three to four hours showed the following. First, Sieler broke into Victim's apartment through a screened

window around 4:45 a.m. with the intent to commit a felony therein, constituting the offense of burglary. SDCL 22–32–1(3). This offense was complete upon Sieler's entering the apartment. Second, after Sieler committed the offense of burglary, Victim and Sieler entered into a heated discussion over Sieler's breaking into her apartment. Sieler demanded Victim have sexual intercourse with him, however, Victim refused. Sieler then forcibly raped Victim for the next ten to fifteen minutes. After Sieler completed the rape (SDCL 22–22–1(2)), Victim went into the bathroom to clean herself because Sieler appeared to have passed out on her bed. However, Sieler awoke and demanded that Victim come into the bedroom. When Victim did enter the bedroom, Sieler pulled a knife from underneath a pillow, placed his hand over Victim's mouth and told her he was going to kill her. Next, Sieler slashed Victim's throat. As Victim was attempting to thwart off another attack, she was able to break the knife. Sieler obtained a second knife from the kitchen and cut Victim four to six inches deep from her navel to her chest. After this, Sieler went into the bathroom and Victim attempted to flee. Sieler caught Victim at the door and slashed her wrist with a razor blade he obtained from the bathroom. These last incidents were treated by the sentencing court as a single transaction and constituted the basis for the aggravated assault and attempted murder convictions. SDCL 22–16–4, 22–4–1 and 22–18–1.1(2). Lastly, after the completion of these gruesome and vile acts, Sieler again entered the bathroom. Amazingly, Victim struggled to the door and into the hallway of her apartment building. At this time, Victim attempted to kick at her neighbor's door. When Sieler realized Victim had left the apartment, he then went into the hall and dragged Victim back into her apartment where he again cut her arm. These actions obviously constituted the elements of the kidnapping conviction by the jury. SDCL 22–19–1. The entire episode lasted three to four hours.

[¶ 18] This court has never directly ruled what constitutes "separate transactions" under our statutory scheme. Other courts have dealt with this issue. In *People v. Sandoval,* 30 Cal.App.4th 1288, 36 Cal.Rptr.2d 646, 651–

52 (1994), the California Court of Appeal held that, although the defendant's attempt to rob and murder the same victim arose from the same intent, to obtain money, the offenses were "separate" for sentencing purposes. The defendant also argued that these actions "emanated from just one indivisible course of conduct." *Id.* 36 Cal. Rptr. 2d at 651. The *Sandoval* court went on to hold that "this is essentially a fact-bound determination.... We will not disturb the determination made below unless it is unsupported by the evidence received." *Id.* at 652. Further, in *Commonwealth ex rel. Krell v. Banmiller,* 56 SchLR 31 (PaC 1960), the court held that the sentencing for burglary and larceny occurring during the same episode was proper because separate sentences may be imposed upon each count upon conviction. These crimes were not the same transaction. The "same transaction" test is valid only when "transaction" means a single act. When the "transaction" consists of two or more criminal acts, the fact that the two are "successive" does not require the conclusion that they have merged. *Krell,* 56 SchLR at 38.

[¶ 19] The jury was instructed to "separately consider each count and the evidence which applies to it. The fact that you may find the defendant guilty or not guilty on any one count of the indictment must not control or influence your verdict on any other count of the indictment." Separate convictions were entered on each offense. Sieler's crimes were each distinct separate acts that were completed before the next act began as shown by the facts stated above.

■ [¶ 20] In *Thomas,* 499 N.W.2d at 622, we affirmed the imposition of consecutive sentences on three offenses arising from separate transactions. The defendant in *Thomas* pled guilty to: (1) possession (on or about February 14, 1989) of a controlled drug, cocaine, with intent to distribute; (2) possession (on or about February 14, 1989) of more than one-half pound but less than one pound of marijuana; and (3) possession (on or about October 25, 1988) of a controlled drug, cocaine. *Id.* at 621. Separate complaints and informations were filed against the defendant on each count. In addition, separate judgments for each of the three convictions were

entered. The sentences were to be served consecutively. The defendant moved to correct the sentences, alleging that the two convictions stemming from the February 14, 1989, arrest were the "same transaction" and the judgments did not reflect this. For parole purposes, the penitentiary was treating the defendant as having three convictions. We held that as long as the judgments meet the statutory requirements of SDCL 23A–27–4 [11] the sentence is legal. *Id.* at 622. Therefore, if there are multiple convictions and separate judgments are entered, the sentence conforms to the statute and will be upheld. *Id.* The sentencing court did enter separate judgments for each conviction against Sieler, in conformity with SDCL 23A–27–4 and *Thomas.*

[¶ 21] Sieler relies on self-created analogies between the habitual offender statutes and the imposition of a sentence as separate transactions. This record does not reflect the filing of any Part II Information under the habitual offender statutes. SDCL 22–7–7, SDCL 22–7–8, and SDCL 22–7–8.1. Under these statutes, the enhancement places the principal crime in an upper, more severe class for sentencing purposes. There is nothing in this record which shows that any of the sentences themselves were "enhanced." The sentencing court exercised its discretion to impose consecutive sentences as separate transactions. SDCL 22–6–6.1 and SDCL 23A–27–4. These sentences are within the parameters established by the legislature and do not violate double jeopardy. *Thomas,* 499 N.W.2d at 622 (citing 8A J. Moore, Moore's Federal Practice § 35.06(a) (2d Ed. 1992) (now found at ¶ 35.04[3][a] (2d Ed. 1995))).

[¶ 22] The sentencing court did not err in sentencing Sieler·on these convictions as separate transactions. Therefore, we affirm as to both issues.

[¶ 23] MILLER, C.J., and KONENKAMP and GILBERTSON, JJ., concur.

[¶ 24] SABERS, J., dissents.

SABERS, Justice (dissenting).

[¶ 25] The addition of the words "separate transactions" to the written judgment *after* defendant began serving his sentence constitutes an illegal enhancement of sentence.

[¶ 26] Circuit Court Judge Hurd could have given defendant life for kidnapping in this case, but he did not. He cannot reopen the sentence or make the same transaction into separate transactions merely by saying it or by adding it after the sentence is being served. He may have made a mistake, but that does not mean we should further the mistake by ignoring the law in an attempt to correct it.

·[¶ 27] South Dakota case law is clear that a sentence cannot be enhanced once it has been imposed and once the defendant has begun serving it—even if the enhanced sentence would have been a legal sentence had the court imposed it in the first place. "[O]nce an offender is within the jurisdiction of the executive branch· of government, the judicial branch—the circuit court—loses jurisdiction and control." *State v. Oban,* 372 N.W.2d 125, 129 (S.D. 1985) (citation omitted). We have stated, on numerous occasions, that "as against an unwilling defendant, a valid sentence cannot be increased in severity after he has commenced the serving thereof[.]" *State v. Ford,* 328 N.W.2d 263, 267 (S.D. 1982) (citing *State v. Hughes,* 62 S.D. 579, 584, 255 N.W. 800, 802 (1934); *State v. Jackson,* 272 N.W.2d 102 (S.D. 1978); *Ex parte* Watt, 73 S.D. 436, 44 N.W.2d 119 (1950)). "[A] sentence commences as soon as the prisoner suffers some confinement in the custody of a sheriff." *Id.*

[¶ 28] In *State v. DeMarsche,* 68 S.D. 250, 1 N.W.2d 67 (1941), a judge sentenced a defendant to ten years imprisonment on the

---

11. SDCL 23A–27–4 states:

In felony and Class 1 misdemeanor cases, judgment of conviction shall set forth the plea, the verdict or findings, and the adjudication and sentence. *In the case of multiple convictions arising from different transactions, a separate judgment of conviction shall be entered for each* conviction. If a defendant is found not guilty or for any other reason is entitled to be discharged, the judgment therefor shall be entered forthwith. Judgments of conviction shall be signed by the judge and filed with the clerk. (Emphasis added.)

principal felony and withheld action on a second "habitual offender" information. The State withdrew its second information and refiled a more detailed information two to three weeks later, at which time a second judge set aside the ten-year sentence the defendant had already begun to serve and gave him a life sentence as enhanced by the second information. This court reversed because "[t]he sentence of the first trial judge is still in all respects valid and effective. The [second] sentence ... was without authority and void." 68 S.D. at 255, 1 N.W.2d at 69.

[¶ 29] In *Ford*, the trial court gave a defendant a sentence of three years with credit for thirty-three days served. Just three days later, before the defendant was transported to the penitentiary, the trial court, on its own motion, increased the sentence to ten years. After examining federal courts' disposition of the issue, this court held *"that the oral sentence is the only sentence, and that the written judgment must conform to it."* 328 N.W.2d at 267 (relying upon *United States v. Marquez*, 506 F.2d 620 (2d Cir. 1974); *Chunn v. United States*, 462 F.2d 1100 (5th Cir. 1972); *United States v. Raftis*, 427 F.2d 1145 (8th Cir. 1970); *Borum v. United States*, 409 F.2d 433 (D.C.Cir. 1967), *cert. denied*, 395 U.S. 916, 89 S.Ct. 1765, 23 L.Ed.2d 230 (1969); *Rakes v. United States*, 309 F.2d 686 (4th Cir. 1962)); *see also State v. Cady*, 422 N.W.2d 828, 830 (S.D. 1988) (collecting additional federal cases to support the proposition that it is settled law "that the oral sentence is the only sentence and the written sentence must conform to it"). On that basis, the court invalidated the second sentence and reinstated the first. We should do the same.

[¶ 30] The facts were even more extreme in *State v. Bucholz*, 403 N.W.2d 400 (S.D. 1987). In that case, the trial court pronounced oral sentence in reliance upon the defendant's self-reports about his reformed behavior since the offense date; almost immediately after sentencing, the court discovered that the defendant and a primary witness had lied about his conduct. The court had the defendant back before it within one hour and ordered a resentencing hearing. Approximately one week later, the court in-

creased the sentence to more than four times the original sentence, which was still within permissible statutory limits. Despite the brief span of time and the defendant's fraud on the court, this court overturned the second sentence in favor of the first, quoting *State v. Tibbetts*, 333 N.W.2d 440 (S.D. 1983) that "a trial court may not use SDCL 23A–31–1 to increase the length of the sentence." *Bucholz*, 403 N.W.2d at 402. *See also Application of Grosh*, 415 N.W.2d 824 (S.D. 1987). In that case, the trial court's modification of its initial oral sentence did not, on its face, increase the length of the sentence; however, this court held that the elimination of a work release provision over five months after sentencing was an "impermissible augmentation of sentence." *Id.* at 828.

[¶ 31] Sieler was sentenced to a total of 105 years imprisonment. Even though he had five convictions, all five of the convictions arose from conduct that occurred within a period of approximately one and one-half hours in the early morning of June 24, 1994. He was the only defendant, there was only one victim, all five charges were handed down on the same day in one indictment, he was arraigned on the same day on all five charges, he was tried before the same jury on all five charges, and he was found guilty of all five charges on the same day. Absent the addition of the words "separate transactions," which appeared in the written Judgments and Sentences but which appear nowhere in the transcript of the oral sentence, Sieler would have become eligible for parole in the year 2008. The addition of those critical two words after a valid oral sentence had been pronounced substantially and impermissibly augmented his sentence by insuring that he would not become eligible for parole until the year 2022.

[¶ 32] The trial court candidly admitted that this term of art, "separate transactions" had not come up at the sentencing hearing: "I don't know that I used the word transaction. I probably didn't[.]" The court further stated: "I do recall that I did instruct counsel for the State ... although I don't think it was on the record ... I did instruct counsel for the State that I wanted these as separate transactions. *But that was not at the sen-*

*tencing hearing, that was subsequent to the sentencing hearing."* (Emphasis added.) In other words, the crucial modification was made after Sieler had already begun to serve his sentence and "was without authority and void." *DeMarsche,* 68 S.D. at 255, 1 N.W.2d at 69.

[¶ 33] As indicated above, even though Judge Hurd made a mistake and improperly second-guessed his initial sentence, it does not justify the majority's complete disregard of the settled law as set forth in this dissent. Accordingly, the words "separate transactions" should be stricken from the written Judgments and Sentences so that the original sentence may be reinstated "as it existed on [the date of original sentencing], in all respects." *Grosh,* 415 N.W.2d at 828.*

---

\* Defense counsel says it well:

Sieler began to serve [his] sentence. The court then enhanced the sentence by adding a critical phrase to four of the five Judgments and Sentences which at a stroke doubled the number of years Sieler would have to serve until becoming eligible for parole. Contrary to the spin the State wishes to put on this sequence of events, this was an illegal ex post facto enhancement of sentence which this court should rectify by striking the words "separate transactions" from the Judgments and Sentences where they appear.