1997 SD 83

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Bradley Allen PUTHOFF, Defendant and Appellant.**

**No. 19606.**

Supreme Court of South Dakota.

Considered on Briefs Dec. 5, 1996.

Decided July 9, 1997.

Mark Barnett, Attorney General, Gary Campbell, Assistant Attorney General, Pierre, for plaintiff and appellee.

Cynthia A. Howard, Minnehaha County Public Defender, Sioux Falls, for defendant and appellant.

1. The second degree burglary charges were filed under SDCL 22–32–3 which is a Class 3 felony punishable by not to exceed fifteen years in the state penitentiary and/or a fine of fifteen thousand dollars. SDCL 22–6–1(5).

MILLER, Chief Justice.

[¶ 1] Bradley Puthoff appeals the sentences for his burglary and aggravated assault convictions. We affirm.

## FACTS

[¶ 2] Puthoff was indicted for two counts of second degree burglary [1] and three counts of aggravated assault [2]. The charges all arose out of Puthoff's surreptitious entries into the residence of another occupant in his apartment complex and his poisoning of some of the food in that other occupant's refrigerator. Pursuant to a plea bargain, Puthoff pled guilty to one count of second degree burglary and one count of aggravated assault. The remaining charges were dismissed. At sentencing, the trial court imposed the following oral sentence:

So in this case, Mr. Puthoff, I'm sentencing you on the charge concerning the aggravated assault to a period of imprisonment in the South Dakota Penitentiary for 15 years, and on the charge, the other charge which you plead guilty, I'm sentencing you to the South Dakota Penitentiary for a consecutive term of 7 additional years. I'm doing this because I think they're separate crimes, Mr. Puthoff, and I think that you are going to need a longer period of time to deal with all these issues. You have to serve the first sentence before you can start the second one, Mr. Puthoff. What I actually meant to say is it's going to be 15 plus 15, I'm suspending 8 upon the condition that he receive counseling and continue counseling when he gets out on parole. I think those 8 years after he gets out are going to be quite critical.

The trial court subsequently entered the following written sentence:

[T]he Court being fully advised in the premises, it is by this Court considered, ordered and adjudged, that you *BRADLEY ALLEN PUTHOFF* be imprisoned in the *SOUTH DAKOTA STATE PENI-*

2. The aggravated assault charges were filed under SDCL 22–18–1.1(2). Aggravated assault under this provision is also a Class 3 felony.

*TENTIARY* located in Sioux Falls, County of Minnehaha, State of South Dakota, for AS TO CT 2 Burglary in 2nd degree;

Fifteen (15) years, with eight (8) years being suspended conditioned that the Defendant attend counseling as recommended by Parole Board; with said sentence to run consecutive to sentence on Ct. 3 Aggravated Assault;

AS TO CT 3 Aggravated Assault;

Fifteen (15) years,

*Separate transactions* and with defendant to receive credit for time in jail[.] (emphasis added).

Puthoff appeals.

### ISSUE 1

[¶ 3] **Did entry of the written sentence declaring Puthoff's criminal acts to be "separate transactions" illegally increase the severity of Puthoff's sentence?**

[¶ 4] "It is the settled law in South Dakota that the oral sentence is the only sentence and the written sentence must conform to it." *State v. Reif,* 490 N.W.2d 511, 516 (S.D.1992).

The genesis of our settled law was the case of *State v. Hughes,* 62 S.D. 579, 584, 255 N.W. 800, 802 (1934) wherein we held that

[A]s against an *unwilling* defendant, a valid sentence cannot be increased in severity after he has commenced the serving thereof ... (emphasis added).

*Hughes, supra* was relied upon by us in *State v. Bucholz,* 403 N.W.2d 400 (S.D. 1987) and in [*State v. Ford,* 328 N.W.2d 263 (S.D.1982) ].

*State v. Munk,* 453 N.W.2d 124, 125 (S.D.1990)(emphasis original).

■ [¶ 5] Puthoff contends the trial court unlawfully increased his sentence in a manner not consistent with the oral sentence when it added the words "[s]eparate transactions" to his written sentence. He argues this is because the designation of his crimes as arising from separate transactions increases the length of time he must serve in the penitentiary before becoming eligible for parole. This argument is based on the provisions of SDCL 24–15–7:

In the determination of an inmate's eligibility for consideration for parole, two or more convictions arising from the same transaction, for which the sentences are made to run consecutively, shall be considered as one conviction. Two or more sentences arising from different transactions for which the sentences are made to run consecutively shall be considered as separate convictions. In determining the eligibility date for a person receiving two or more sentences which are made to run consecutively, the sentences shall be added together and the total number of convictions shall then determine the total amount of time to be served before becoming eligible for consideration for parole subject to the provisions of § 24–15–5.

Puthoff asserts the computations required under this provision lead to the following results in his case:

[T]reating [Puthoff's] convictions as one transaction would mean that he must serve three years, one month and 15 days before becoming eligible for parole. If his convictions are treated as separate transactions, he must serve four years, eight months and seven days before becoming parole eligible, a difference of nineteen months in the Penitentiary with no chance for conditional release.

State does not dispute these calculations in its brief and, therefore, for purposes of this decision, we presume they are accurate.

■ [¶ 6] We find Puthoff's argument resolved by our decision in *State v. Sieler,* 1996 SD 114, 554 N.W.2d 477. Sieler had been convicted of kidnapping, attempted murder, rape, burglary and aggravated assault. All of the charges stemmed from an incident that took place one morning in June 1994. Sieler was sentenced to consecutive penitentiary sentences on each conviction for a total of one hundred five years. As in this case, there was no mention by the sentencing court during oral sentencing that all of the offenses were separate transactions. However, each written judgment and sentence denoted that all of the offenses were separate

transactions.[3] On appeal, Sieler, like Puthoff, contended the addition of the words "separate transactions" to the written judgments and sentences illegally enhanced his sentence. We rejected this contention on various grounds including our observation that:

> SDCL 24–15–1.1 states:
>
>> Parole is the *discretionary* conditional release of an inmate from actual penitentiary custody before the expiration of his term of imprisonment. The prisoner remains an inmate under the legal custody of the department of corrections until the expiration of his term of imprisonment. A prisoner is not required to accept a conditional parole. *A prisoner is never entitled to parole.* However, parole may be granted if in the judgment of the board of pardons and paroles granting a parole would be in the best interests of society and the prisoner.
>>
>> *Neither this section or its application may be the basis for establishing a constitutionally protected liberty, property or due process interest in any prisoner.* (Emphasis added.)
>
> The United States Supreme Court has specifically held that a convicted person has no constitutional right to parole. *Greenholtz v. Nebraska Penal Inmates,* 442 U.S. 1, 7, 99 S.Ct. 2100, 2104, 60 L.Ed.2d 668, 675 (1979); *see also Winters v. Solem,* 444 N.W.2d 722, 724 (S.D.1989). Sieler's sentence was not increased by the words "separate transaction," only his parole eligibility is affected by these words.

*Sieler,* 1996 SD 114 at ¶ 13, 554 N.W.2d at 481 (emphasis original).

[¶ 7] Puthoff's sentence, like Sieler's, was not increased by the addition of the words "separate transactions" to the written judgment and sentence. Only parole eligibility was affected. Accordingly, the addition of the words "separate transactions" to the written judgment and sentence did not violate the prohibition against the written sentence increasing the severity of the oral sentence.

## ISSUE 2

[¶ 8] **Did the trial court exceed its jurisdiction in determining Puthoff's convictions were the result of separate transactions?**

[¶ 9] Puthoff next contends the finding that a defendant has been involved in two or more separate criminal transactions is exclusively a finding the parole board makes in determining a defendant's likelihood of rehabilitation. Therefore, he argues making the finding is an exclusive executive branch function and that the trial court violated this separation of powers by determining his convictions were the result of separate transactions.

[¶ 10] In support of his contentions, Puthoff observes that the statutes governing the determination of parole eligibility dates, including the determination that two or more crimes are the result of separate transactions, are primarily contained in SDCL 24–15–6 and 24–15–7. He properly points out that SDCL Ch. 24–15 is the code chapter governing paroles from the penitentiary, an executive branch function.

[¶ 11] Puthoff's argument ignores that whether separate transactions are involved in multiple criminal offenses is an inherent consideration in a criminal prosecution from the time of the drawing of an indictment or information. In that very regard, SDCL 23A–6–23 provides:

> Two or more offenses may be charged in the same indictment or information in separate counts for each offense, if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character *or are based on the same act or transaction or on two or more acts or transactions connected together or con-*

---

3. SDCL 23A–27–4 does provide that, "[i]n the case of multiple convictions arising from different transactions, a separate judgment of conviction shall be entered for each conviction." This rule was not followed in the instant case as only a single judgment of conviction was entered.

However, we find no prejudice suffered by Puthoff from this omission and determine it to be a matter of harmless error involving form over substance. *See State v. Orelup,* 520 N.W.2d 898, 902 (S.D.1994)(prejudicial error must harm substantial rights of defendant).

*stituting parts of a common scheme or plan.* (emphasis added).

[¶ 12] It is this statute that permitted Puthoff to be charged in a single indictment in the first instance. We find Puthoff's argument to the contrary to be without merit.

### ISSUE 3

[¶ 13] **Did the trial court err in treating Puthoff's crimes as arising from separate transactions?**

[¶ 14] Citing extensive authorities from other jurisdictions, Puthoff asserts the trial court erred in declaring his burglary offense and aggravated assault offense arose from separate transactions. He argues these individual crimes merely constituted essential elements of one goal, i.e., to poison his victim's food. Accordingly, he asserts the two crimes merely constituted parts of a single transaction.

[¶ 15] Puthoff's argument is simply not consistent with our holding in *Sieler, supra.* Sieler, just like Puthoff, broke into an apartment with the intent to commit a felony therein. In short, he committed a burglary. After the burglary, Sieler raped a victim within the apartment and committed various other acts of violence upon her. In determining whether the burglary constituted a separate transaction from the balance of the other offenses, we held:

> Sieler broke into Victim's apartment through a screened window around 4:45 a.m. with the intent to commit a felony therein, constituting the offense of burglary. SDCL 22–32–1(3). *This offense was complete upon Sieler's entering the apartment.* Second, *after Sieler committed the offense of burglary,* Victim and Sieler entered into a heated discussion over Sieler's breaking into her apartment. Sieler demanded Victim have sexual intercourse with him, however, Victim refused. Sieler then forcibly raped Victim for the next ten to fifteen minutes. *After* Sieler completed the rape (SDCL 22–22–1(2)), Victim went into the bathroom to clean herself because Sieler appeared to have passed out on her bed. . . .
>
> . . . Sieler's crimes were each distinct separate acts that were completed before the

next act began as shown by the facts stated above.

*Sieler,* 1996 SD 114 at ¶¶ 17–19, 554 N.W.2d at 482 (emphasis added).

[¶ 16] Applying this same rationale in the instant case, Puthoff first broke into his victim's apartment by making an unauthorized entry with a master key and with the acknowledged intent to poison his victim. This was sufficient to constitute the offense of burglary under SDCL 22–32–3. As in *Sieler,* this offense was complete when Puthoff entered the apartment. Second, after Puthoff committed the offense of burglary, he opened the victim's refrigerator and poisoned the victim's food by putting weed-killer in some of the food items. This constituted the aggravated assault under SDCL 22–18–1.1(2). Thus, Puthoff's crimes were each distinct separate acts that were completed before the next act began. It follows that, as in *Sieler,* the trial court did not err in sentencing Puthoff on these convictions as separate transactions.

[¶ 17] Affirmed.

[¶ 18] AMUNDSON, KONENKAMP and GILBERTSON, JJ., concur.

[¶ 19] SABERS, J., dissents.

SABERS, Justice (dissenting).

[¶ 20] I dissent for the same reasons set forth in my special writing in *State v. Sieler,* 1996 SD 114, ¶¶ 25–33, 554 N.W.2d 477, 483–85 (Sabers, J., dissenting), reproduced in part as follows:

> The addition of the words "separate transactions" to the written judgment *after* defendant began serving his sentence constitutes an illegal enhancement of sentence.
>
> . . . .
>
> South Dakota case law is clear that a sentence cannot be enhanced once it has been imposed and once the defendant has begun serving it—even if the enhanced sentence would have been a legal sentence had the court imposed it in the first place. "Once an offender is within the jurisdiction of the executive branch of government, the judicial branch—the circuit court—loses

jurisdiction and control." *State v. Oban*, 372 N.W.2d 125, 129 (S.D.1985) (citation omitted). We have stated, on numerous occasions, that "as against an unwilling defendant, a valid sentence cannot be increased in severity after he has commenced the serving thereof[.]" *State v. Ford*, 328 N.W.2d 263, 267 (S.D.1982) (citing *State v. Hughes*, 62 S.D. 579, 584, 255 N.W. 800, 802 (1934); *State v. Jackson*, 272 N.W.2d 102 (S.D.1978); *Ex parte Watt*, 73 S.D. 436, 44 N.W.2d 119 (1950)). "A sentence commences as soon as the prisoner suffers some confinement in the custody of a sheriff." *Id.*

. . . .

... After examining federal courts' disposition of the issue, this court held *"that the oral sentence is the only sentence, and that the written judgment must conform to it."* [*Ford*, 328 N.W.2d at 267] (relying upon *United States v. Marquez*, 506 F.2d 620 (2d Cir.1974); *Chunn v. United States*, 462 F.2d 1100 (5th Cir.1972); *United States v. Raftis*, 427 F.2d 1145 (8th Cir. 1970); *Borum v. United States*, 409 F.2d 433 (D.C.Cir.1967), *cert. denied*, 395 U.S. 916, 89 S.Ct. 1765, 23 L.Ed.2d 230 (1969); *Rakes v. United States*, 309 F.2d 686 (4th Cir.1962)); *see also* State v. Cady, 422 N.W.2d 828, 830 (S.D.1988) (collecting additional federal cases to support the proposition that it is settled law "that the oral sentence is the only sentence and the written sentence must conform to it"). On that basis, the [*Ford*] court invalidated the second sentence and reinstated the first. We should do the same.

*Id.* at ¶¶ 25–29, 554 N.W.2d at 483–84 (emphasis in original).

[¶ 21] In *Bartone v. United States*, 375 U.S. 52, 84 S.Ct. 21, 11 L.Ed.2d 11 (1963), the United States Supreme Court dealt with a written judgment and sentence which levied a sentence of one year and one day, exceeding the orally pronounced sentence by one day. The Court framed the issue as follows:

May a United States District Judge orally revoke the probation of a Defendant in open court and in the presence of the Defendant and his counsel and impose a sentence of confinement for a specific period of time and thereafter enter a formal written judgment and commitment in which a larger and longer sentence of confinement is imposed and set forth?

The Court answered in the negative stating, "This error, in enlarging the sentence in the absence of petitioner, was so plain in light of the requirements of Rule 43[4] that it should have been dealt with by the Court of Appeals, even though it had not been alleged as error." *Accord United States v. Marquez*, 506 F.2d 620, 622 (2nd Cir.1974) (reversing and remanding for written judgment to be corrected in accordance with the oral pronouncement of sentence). Similarly, in this case, Puthoff's oral sentence was pronounced on March 18, 1996; however, the written Judgment and Sentence was signed and filed by the circuit court judge on March 19, 1996.

If, as the Government would have it, appellant was sentenced not when he appeared before [the sentencing judge] but at some later time when the commitment was signed, the sentence would be invalid since appellant was not present.

*Id.* (quoting *Sobell v. United States*, 407 F.2d 180, 184 (2nd Cir.1969)). Clearly, the enhancement was illegal under our statutes, as well as United States Supreme Court and South Dakota Supreme Court precedent. *See also United States v. Rourke*, 984 F.2d 1063, 1066 (10th Cir.1992) (reversing and remanding for resentencing; defendant clearly had right to be present in open court when judge made original sentence harsher by adding special parole term not mentioned at oral sentencing); *accord Rust v. United States*, 725 F.2d 1153, 1154 (8th Cir.1984) (defendant must be present when sentence is made more onerous); *United States v. McCray*, 468 F.2d 446, 450–51 (10th Cir.1972)

---

**4.** Rule 43(a) of the Federal Rules of Criminal Procedure is codified at SDCL 23A–39–1, and provides:

A defendant shall be present at his arraignment, at the time of his plea, at every stage of his trial including the impaneling of the jury and the return of the verdict, and *at the imposition of sentence*, except as provided by §§ 23A–39–2 and 23A–39–3.

(Emphasis added). The exceptions provided in 23A–39–2 & –3 do not apply in this case.

(noting that the written judgment was invalid both because it augmented the sentence and because it was entered without the presence of either defendant or his counsel).

[¶ 22] The defendant's right to be present and to speak when his sentence is imposed is constitutionally based. *Illinois v. Allen*, 397 U.S. 337, 338, 90 S.Ct. 1057, 1058, 25 L.Ed.2d 353, 356, *reh'g denied*, 398 U.S. 915, 90 S.Ct. 1684, 26 L.Ed.2d 80 (1970) ("One of the most basic of the rights guaranteed by the Confrontation Clause is the accused's right to be present in the courtroom at every stage of his trial."); *United States v. Jackson*, 923 F.2d 1494, 1496 (11th Cir.1991); *United States v. Huff*, 512 F.2d 66, 71 (5th Cir.1975) ("The sentencing is, of course, a critical stage of the proceedings against the accused, at which he is constitutionally entitled to be present and represented by counsel.") (citing *Mempa v. Rhay*, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967)); *cf. United States v. Turner*, 532 F.Supp. 913, 915–16 (N.D.Cal. 1982) (not even defendant can waive requirement of presence at sentencing).

[¶ 23] Absent the addition of the words "separate transactions," which appeared in the written Judgment and Sentence but do not appear in the transcript of the oral sentence, Puthoff would have become eligible for parole almost two years earlier than he will under the illegally enhanced sentence. The addition of those critical two words, after a valid oral sentence was pronounced and outside the presence of the defendant, impermissibly augmented his sentence.

[¶ 24] The majority is wrong when it states that the change in Puthoff's parole eligibility date "did not violate the prohibition against the written sentence increasing the severity of the oral sentence." *Supra* ¶ 7. *See Weaver v. Graham*, 450 U.S. 24, 35–36, 101 S.Ct. 960, 968, 67 L.Ed.2d 17, 27 (1981) (unanimously concluding that a law which postponed the date when an inmate would become eligible for early release by curtailing the availability of future gain-time credits made the punishment more onerous); *Lynce v. Mathis*, 519 U.S. ——, ——, 117 S.Ct. 891, 896, 137 L.Ed.2d 63, 73 (1997) (noting that the essential inquiry is whether the period of incarceration is lengthened).

While both *Weaver* and *Lynce* involved the ex post facto clause, it is clear that pushing the date upon which an inmate becomes eligible for parole into the future constitutes enhanced punishment. "[T]he removal of [good time] provisions can constitute an increase in punishment, because a 'prisoner's eligibility for reduced imprisonment is a significant factor entering into both the defendant's decision to plea bargain and the judge's calculation of the sentence to be imposed.'" *Lynce*, 519 U.S. at ——, 117 S.Ct. at 898, 137 L.Ed.2d at 75 (quoting *Weaver, supra*); *cf. Wolff v. McDonnell*, 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935, 951 (1974):

> Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior ... [b]ut the State having created the right ..., the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*See also In re Grosh*, 415 N.W.2d 824 (S.D. 1987). In that case, the trial court's modification of its initial oral sentence did not, on its face, increase the length of the sentence; however, this court held that the elimination of a work release provision over five months after sentencing was an "impermissible augmentation of sentence." *Id.* at 828. Moreover, whether a sentence has been increased is not a matter of degree—even "technical" increases warrant the vacating of written judgments which do not comply with the oral sentence. *See, e.g., Cook v. United States*, 171 F.2d 567, 569 (1st Cir.1948), *cert. denied*, 336 U.S. 926, 69 S.Ct. 647, 93 L.Ed. 1088 (1949) (holding that district court was not empowered to increase sentence by amending judgment to include a fine of $1.00; not even the suspension of payment of the fine changed the fact that the sentence was illegally increased); *Bartone, supra* (enhancement of sentence by only one day constituted error).

[¶ 25] Accordingly, the words "separate transactions" should be stricken from the written Judgment and Sentence so that the original sentence may be reinstated "as it existed on [the date of original sentencing], in all respects." *Grosh,* 415 N.W.2d at 828. While the majority may have thought *Sieler* was an anomaly, it is clear the mistake was repeated in this case. The majority should admit the error and reinstate the oral sentence, not compound the error by affirming Puthoff's illegal sentence.